[Civ. No. 8350.   Third Dist.   Oct. 4, 1954.]

ARTHUR MARSH, Respondent, v. CITY OF SACRA-MENTO et al., Appellants.

Desmond, McLaughlin & Russell, Gerald M. Desmond and C. K. Curtright for Appellants.

Thomas W. Loris for Respondent.

VAN DYKE, P. J.—This is an appeal from a judgment for damages entered in favor of plaintiff-respondent upon a jury's verdict. Respondent was injured when he fell from the edge of a sidewalk into and upon appellant Oeste's property. This property, at the time of the accident, was a vacant city lot, the surface of which lay some 8 feet below the edge of the sidewalk from which respondent fell. There was no guard rail or other structure to either warn persons using the side-walk or prevent their falling therefrom. The action was brought against the city and against appellant Oeste, the owner of said lot, and judgment went against both.

It is not disputed but that the city and Oeste both had knowledge of the admittedly dangerous condition at the site of the accident and that they had had such knowledge for a time amply long to have enabled either or both of them to remedy that condition; but each claims that liability therefor rested solely upon the other. The evidence shows that as far back as 1862, at which time both street and lot were on approximately the same level, the city began raising the grade of its street so that by 1884 the grade had been raised to its present level above the surface of the lot. The building on the lot joined the sidewalk. Its ground floor was at the street level, and the area below constituted a sort of basement. The hazard which respondent claimed caused his injuries when he fell did not exist while the building was there. About 1940 or 1941 the city condemned the Oeste building for occupancy, and Oeste demolished and removed it, with the result that along the full front of her lot the sidewalk was 8 feet above her lot level. She then constructed a wooden fence along the edge of the sidewalk and maintained it there for some time and the evidence shows that while so maintained there was no reasonable hazard that sidewalk users could fall

or be jostled over. But, as time went on, the fence came into disrepair, apparently because pilferers removed portions of it from time to time, and this went on until for some time before respondent's accident there was for all practical purposes no fence or other protective structure along the sidewalk. This situation was called to the attention of the responsible agents of the city and the city attorney addressed a letter to Oeste, in which the danger was called to her attention also and she was asked to consult with the city attorney about the matter. While she did not do this, she did contact a builder and obtain from him an estimate of the cost of constructing an adequate fence, but she did nothing further. Neither did the city take any action and so for some time before respondent fell the hazard remained. Respondent had lived in the vicinity of the site for some years and during a part of that period had been able to see, but for some time before the accident the sight of his eyes had become impaired to the extent that he could only distinguish light and dark. He moved about the city streets, tapping his way with a blind man's white cane. This he was doing when he fell from the sidewalk onto the Oeste property. At the exact point where he seems to have fallen the former owners of the Oeste building had inserted in the sidewalk a thick granite slab 16 feet in length intruding into the sidewalk about half its width, the rest being located on or over the Oeste property. This slab apparently constituted part of an entrance to the Oeste building. Along the rest of the Oeste property line the sidewalk did not extend to the Oeste property, there being a strip between the street line and the property line extending along the front of the lot from 8 inches to about a foot in width. However, as stated, the sidewalk had extended to the building. Considerable has been said in the briefs concerning the placing and the position of the granite slab and the legal effect thereof upon the liability of the city and Oeste, but, as we view the situation, the liability of each appellant is so predicated it is immaterial that respondent fell at the point where the slab forming a part of the walkway actually overhung the property line by a few inches.

### APPEAL OF CITY OF SACRAMENTO

The city contends against its liability, arguing as follows: That although it raised its street level yet since 1884 and until the demolition of the Oeste building this created no hazard to users of the sidewalk. When, therefore, Oeste

demolished the building the city did all it was obligated to do when it told her of the dangerous condition thereby created and in effect called upon her to maintain a barrier fence or other protection to sidewalk users. We think this position untenable. The city's liability is grounded upon the provisions of section 53051 of the Government Code, formerly known as the 1923 Public Liability Act, which provides that local government agencies shall be liable for injuries resulting from the dangerous or defective condition of public property if the agency has notice or knowledge of such condition for a length of time reasonably sufficient to have remedied the same. The statutory provisions ''base liability upon any act which leaves a place or condition dangerous or defective and liable to cause some injury to the *general public.*'' (*Gibson* v. *County of Mendocino,* 16 Cal.2d 80, 85 [105 P.2d 105].) As we have said, that the situation was dangerous is not here in dispute. That there was no defect in the surface of the sidewalk is not material. The sidewalk itself, by reason of the drop-off and in view of the uses to which sidewalks are commonly put, was in a dangerous condition, for the probability that persons using it might fall or be jostled off was apparent. The obligation cast upon the city by the statute required that so long as it permitted the passage of persons over its sidewalk it had a duty to protect them against this danger and this duty could not be met by ordering someone else to erect the barrier even if such person was obligated to do so. The statute contains no exception to the effect that if others have an obligation in the matter the city's obligation is thereby lessened or extinguished.

''. . . The city is under a duty to keep sidewalks in safe condition, it is directly liable to pedestrians for failure to correct a dangerous condition of which it had notice, and it is not relieved of its responsibility in this regard merely because the condition was created or maintained by a property owner who might also be liable to pedestrians for injuries resulting therefrom.'' (*Peters* v. *City & County of San Francisco,* 41 Cal.2d 419, 429 [260 P.2d 55].)

We may add that a sidewalk or street whose surface is without defect can nevertheless be made dangerous for use by conditions existing without its boundaries. (*Shea* v. *City of San Bernardino,* 7 Cal.2d 688, 692-693 [62 P.2d 365].) Neither does the fact that Oeste demolished and removed her building, and thereby initiated the situation which rendered the sidewalk dangerous, in any way mitigate the city's duty,

which then arose, to take further precautions that the use of its sidewalk should not endanger the public. The city's maintenance of the sidewalk constituted an invitation to the public to use it; and those who did so could, under appropriate conditions as to their own proper conduct, go against the city if by reason of that dangerous condition they were injured. The judgment against the city must be affirmed.

## Appeal of Elizabeth S. Oeste

Oeste contends that she is without liability to respondent, and, without attempting to state her argument in detail, we may for our purposes now summarize it as follows: Oeste had no control of the instrumentalities involved in respondent's fall and consequential injury. On the contrary, says Oeste, respondent was injured because he fell from a city street into and upon her property which adjoined the street some 8 feet below the street level; Oeste's property is now as it was some 90 years ago, i.e., in its natural condition; the city artificially raised the street level and created a declivity from the street into Oeste's lot; neither Oeste nor her predecessors in interest had any control over these acts of the city and could not have prevented them; therefore the city created a hazard which led to respondent's injury.

From this factual situation Oeste contends that she violated no duty which she owed to any member of the public using the sidewalk when she removed her building. She asked a series of instructions based upon her concept of the law applicable to the facts of the case. She asked the court to instruct the jury that no affirmative duty rested upon her as the owner of the abutting property to keep the sidewalk in a safe condition although such an owner could not, without liability, create by positive action a condition likely to harm persons lawfully using the walk; that if the plaintiff in the case had any recoverable claim against Oeste it must rest on the proposition last stated. This instruction the court gave. But, says Oeste, the court refused other instructions qualifying the one given so that the jury was in effect told it was at liberty to find that the demolition of her building by Oeste was in itself a sufficient creation of a hazard to bring her within the rule of the instruction. Oeste refers to instructions requested and refused, which were in substance as follows: A possessor of land who creates an excavation or other artificial condition so near an existing highway that he knows or should know its presence involves an unreasonable risk to

others accidentally brought into contact therewith while traveling with reasonable care, is liable for bodily harm caused to them; but for that liability to arise the condition must have been created by the possessor or his predecessors. If a highway is established in close proximity to an existing excavation or other dangerous condition upon a possessor's land, whether constructed by him or otherwise created, the sole duty of guarding against the danger is charged to those who have the duty of maintaining the way in a reasonably safe condition. More specifically, Oeste asked an instruction that if the dangerous condition which caused respondent's· injuries was created by the city in grading the street and constructing the sidewalk and the owner of the lot had made no change in the surface thereof which either created or contributed to the dangerous condition, such owner would not be liable to respondent.

Accepting the instruction given without determining at this point whether or not it accurately states the obligations and liability of an abutting owner along city streets, and conceding the additional instructions would have high-lighted the principle stated in the one given, that Oeste could not be held unless she created the hazard, we hold that from the facts the jury could conclude that she did in fact create that hazard. For many, many years while Oeste and her predecessors maintained and used the building on her lot, that building and the sidewalk were flush against each other so that the city not only need not erect a barrier in addition to that furnished by the wall of the building, but could not have done so without lessening the utility of the walk. This building was as much a part of Oeste's land as was the surface of the soil. When Oeste removed it she just as effectually created the declivity over which respondent fell as would a property owner who dug an excavation along the edge of the sidewalk abutting on his property and left the declivity unguarded.

". . . The privilege of a possessor of land to make use of his property is qualified by a due regard for the interests of others who may be affected by it. He is under the obligation to make only a reasonable use of his property, which causes no unreasonable harm to those in the vicinity. . . .

"A large number of cases have involved danger to the adjacent highway. The public right of passage carries with it an obligation upon the occupiers of abutting land to use reasonable care to see that the passage is safe. They are not required to maintain or repair the highway itself, but they

will be liable for any unreasonable risk to those who are on it, such as an open coal hole in the sidewalk, or overhanging objects ready to fall. The obligation extends also to any conditions, such as an excavation next to the street, which are dangerous to those who use it. The status of a user of the highway has been extended to those who stray a few feet from it inadvertently or in an emergency, or even intentionally for some casual purpose, . . .'' (Prosser on Torts, pp. 601, 603-604.)

We think the foregoing statement of the obligations of possessors of land is applicable to the situation presented here. When Oeste removed her building, leaving the sidewalk unguarded, she violated her legal duty to those using that sidewalk. She created an unreasonable hazard with respect to those using the walkway and when the jury found that this hazard so created was a proximate cause of respondent's injury it properly held her liable therefor.

In view of what we have said, it is unnecessary to consider the matter treated in the brief as to the legal effect of Oeste's conduct in first erecting a barrier fence when she took her building down and then permitting it to fall into such disrepair that it was no longer a barrier. The court gave no instructions that this conduct by itself afforded any ground for holding her to liability.

Appellant Oeste complains that the verdict was against the evidence and contrary to the instructions of the trial court in this, that there was evidence respondent knew there was no fence around the vacant lot, which knowledge he gained before he lost his sight. Based upon this evidence, Oeste requested, and the court gave, an instruction to the effect that if respondent had actual knowledge of the dangerous condition of the sidewalk and actual knowledge of the absence of any safeguards then no duty rested upon Oeste to warm him of such danger or to protect him against it. But respondent testified that though he had known that for some time there had been neither building nor fence along the sidewalk yet he had not seen the premises for about a year before the accident and assumed there was a fence around it. In view of this testimony it was a question for the jury to determine whether or not at the time of the accident respondent had, and bore in mind, such actual knowledge of the danger he ran in using the sidewalk as would shield the creator of that dangerous condition from liability. The position of appellant also ignores the fact that the jury could

have inferred that respondent, while still in the exercise of ordinary care, may have forgotten momentarily the existence of the hazard of which he had once had knowledge.

What we have said about the creation of hazard disposes of Oeste's contention that her demurrer to the second amended complaint should have been sustained for want of a direct allegation that she had created that hazard.

The judgment and the order denying motion for judgment notwithstanding verdict are affirmed.

Peek, J., and Schottky, J., concurred.