[Civ. No. 24370. First Dist., Div. One. Mar. 25, 1968.]

MONTY HOLMES, a Minor, etc., Plaintiff and Appellant, v.
CITY OF OAKLAND, Defendant and Respondent.

Arthur C. Zief and Raymond Glickman for Plaintiff and Appellant.

Edward A. Goggin, City Attorney, and William C. Sharp, Deputy City Attorney, for Defendant and Respondent.

MOLINARI, P. J.—Plaintiff, a minor appearing by his guardian ad litem, filed a complaint purporting to allege four causes of action against the City of Oakland and other

defendants for damages for personal injuries incurred when a Santa Fe railroad train ran over plaintiff, severing both of his legs. The court sustained with leave to amend the City's demurrer to all four causes of action on the ground that none of them stated a cause of action against the City. Plaintiff having declined to amend, the court entered judgment of dismissal in favor of the City, from which plaintiff appeals.

Plaintiff concedes that his claim of liability against the City is predicated solely upon Government Code section 835[1] which provides that a public entity is liable for injury caused by a dangerous condition of its property if the injury was proximately caused by the dangerous condition, the dangerous condition created a reasonably foreseeable risk of the kind of injury that was incurred, and the City had actual or constructive notice of the dangerous condition and sufficient time prior to the injury to have taken protective measures. Section 830, subdivision (a) defines a dangerous condition as one creating a substantial risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used.

The complaint alleges essentially that the 6-year-old plaintiff was run over by a Santa Fe train while a pedestrian on Lowell Street in Oakland on June 3, 1965. The "first cause of action" alleges that the City owned a certain railroad right-of-way which it negligently maintained, operated, leased, and controlled so as to cause the said train to be negligently maintained, owned, operated and controlled by the Santa Fe Railroad Company. The "second cause of action" contains the foregoing allegations and in addition alleges that Lowell Street is owned by the City; that the railroad tracks were located on the street in close proximity to a grammar school, a fact known to the City; that the City allowed trains to be operated on the street at or near the time students were dismissed from school; that many students, including plaintiff, crossed the tracks on their way home from school; that the students were attracted to and regularly played on or around the trains and railroad cars; that the City realized or should have realized this was a dangerous condition; that this attractive and dangerous condition could have been remedied by imposing restrictions on the operation of the trains, or by providing guards or other safeguards, at the time when children were on their way home from school; that although the

---

[1]Unless otherwise indicated, all statutory references are to the Government Code.

City had knowledge of the dangerous condition, it failed to take any measures whatsoever to protect the children; and that plaintiff while crossing Lowell Street on his way home from school was attracted to the train and railroad cars, causing him to be thrown under the wheels thereof.

The "third cause of action," which alleges that the City conducted classes in said grammar school, realleges essentially all of the foregoing allegations and alleges that the City knew or should have known that students of tender years would be attracted to the railroad tracks and that they regularly played thereon or upon the train and cars which were run on said tracks. Finally, the "fourth cause of action" alleges all of the foregoing facts and alleges further that the City negligently failed to instruct or supervise plaintiff as to his conduct in returning home from said school.

In determining whether the trial court was justified in sustaining the demurrer we must ascertain whether the complaint states at least one cause of action. Our consideration of whether the subject complaint states one or more causes of action requires that we examine it in relation to certain well-defined rules. These are: "A demurrer reaches only to the contents of the pleading and such matters as may be considered under the doctrine of judicial notice" (*Weil* v. *Barthel*, 45 Cal.2d 835, 837 [291 P.2d 30]; *County of Los Angeles* v. *Security First Nat. Bank*, 84 Cal.App.2d 575, 579 [191 P.2d 78]); the material and issuable facts pleaded in the complaint must be regarded as true (*Stigall* v. *City of Taft*, 58 Cal.2d 565, 567-568 [27 Cal.Rptr. 441, 375 P.2d 289]; *Flores* v. *Arroyo*, 56 Cal.2d 492, 497 [15 Cal.Rptr. 87, 364 P.2d 263]; *Hauger* v. *Gates*, 42 Cal.2d 752, 755 [269 P.2d 609]); a demurrer does not, however, admit contentions, deductions or conclusions of fact or law alleged in the complaint (*Marin* v. *Jacuzzi*, 224 Cal.App.2d 549, 552 [36 Cal. Rptr. 880]; *Howard* v. *City of Los Angeles*, 143 Cal.App.2d 195, 197 [299 P.2d 294]), or facts impossible in law (*Griffin* v *County of Colusa*, 44 Cal.App.2d 915, 918 [113 P.2d 270]), or allegations contrary to facts of which a court may take judicial knowledge. (*Chavez* v. *Times-Mirror Co.*, 185 Cal. 20, 23 [195 P. 666]; *Griffin* v. *County of Colusa, supra*, at p. 918; *American Distilling Co.* v. *Johnson*, 132 Cal.App.2d 73, 77 [281 P.2d 598]; *Livermore* v. *Beal*, 18 Cal.App.2d 535, 540 [64 P.2d 987].) We are also to be guided by the following basic principle: All that is necessary against a general demurrer is that, upon a consideration of all the facts stated,

it appears that the plaintiff is entitled to *any* judicial relief against the defendant, notwithstanding that the facts may not be clearly stated, or may be intermingled with a statement of other facts irrelevant to the cause of action shown, or although the plaintiff may demand relief to which he is not entitled under the facts alleged. (*Gressley* v. *Williams*, 193 Cal.App.2d 636, 639 [14 Cal.Rptr. 496]; *Hilltop Properties, Inc.* v. *State of California*, 233 Cal.App.2d 349, 354 [43 Cal. Rptr. 605].)

Adverting to the instant complaint in the light of the foregoing principles we first conclude that it purports to state only one cause of action although stated differently in each of the four counts. The action seeks to enforce a single right allegedly violated by the City, the essence of the complaint being that the City had the duty of maintaining its property in a safe condition, that it owed this duty to plaintiff, and that it breached that duty. There is, therefore, an attempt to plead only one single cause of action, which, if it exists, arises under the provisions of section 835.

■ The first count does not state a cause of action because it not only fails to allege that the City maintained a "dangerous condition" as that term is defined in section 830, but also fails to allege that the condition alleged to exist created a reasonably foreseeable risk of the kind of injury that was incurred and neglects to allege that the City had actual or constructive notice of such condition.

A cause of action is stated, however, in the second and third counts. The only apparent difference between the allegations of these counts is that the second count predicates liability on a dangerous condition of the City's *own* property while the third count bases liability on the theory that the City's own property was dangerous because a condition on *adjacent* property exposed those using the public property to a substantial risk of injury.

■ Directing our attention, first, to the second count we note that plaintiff alleges that the City owns the railroad right-of-way. The City argues that the Santa Fe has a franchise from the City to run trains over and along Lowell street and that, therefore, section 830, subdivision (c) is applicable. That section excepts from the definition of property of a public entity "easements, encroachments and other property that are located on the property of the public entity but are not owned or controlled by the public entity."

Although the complaint does not allege facts which would invoke section 830, subdivision (c) by indicating that the City merely owns the underlying land and the railroad owns and controls an easement or franchise to lay tracks and operate trains thereon, regulations and enactments of the City which disclose the relationship between the City and the railroad and the legal status and nature of the subject right-of-way are matters which may be judicially noticed and read into the complaint. (Evid. Code, §§ 451 and 452; see *South Shore Land Co. v. Petersen*, 226 Cal.App.2d 725, 745-746 [38 Cal. Rptr. 392].) The record does not disclose that any such matter was properly noticed by the trial court or that an appropriate request therefor was made to such court under Evidence Code section 453. Accordingly, since section 459 of the Evidence Code provides authority for the reviewing court to exercise the same discretionary power to take judicial notice as is possessed by the trial court, we elected to invoke section 459 and requested the City to furnish us with pertinent information for the purpose of determining the propriety of taking judicial notice and the tenor of the matter to be noticed, and we afforded plaintiff the opportunity to meet such information.

Pursuant to said request we have been furnished with a certified copy of Ordinance No. 6457 C.M.S. of the City granting the Atchison, Topeka & Santa Fe Railroad Company a franchise to construct, maintain and operate a commercial railroad along with and across various public streets in the City of Oakland. The geographical boundaries of the franchise are delineated in a print referred to in the ordinance, a copy of which has also been furnished to us. The ordinance and said print disclose that among the public streets designated is Lowell Street, along and in which the railroad is franchised to construct and maintain tracks and to operate thereon a common carrier transportation line. Adverting to the provisions of the ordinance we note that the franchise is nonexclusive and permits the City to grant over the routes therein specified identical, similar or other types of franchise to any person, firm or corporation other than the grantee railroad. The ordinance prohibits the use of steam locomotives, prohibits the stopping or standing on tracks in improved streets of trains and cars excepting the switching of cars and the stopping at stations, and limits the time for such stops at vehicular crossings. The ordinance further provides for notice to the City of street work to be performed by the railroad on the franchise

property, other than routine maintenance and repairs and emergency work, and provides for authority to regulate and restrict the time and manner of performing work in the public streets in the area covered by the franchise, and provides further that when the City repaves or changes the grade of the public street under certain circumstances the railroad is required to repave and regrade the franchise property to conform with the City's work and to the City's satisfaction. Provision is also made for the City to control the construction of the tracks by the railroad, grade crossings, and crossing protection, and for the City to construct, repair and remove public improvements and facilities under or above any street covered by the franchise. Finally, the ordinance provides that the City has the right to inspect the property constructed and maintained pursuant to the franchise.

It is apparent from the foregoing provisions of the ordinance that the property subject to the railroad franchise is under the control of the City and is included within the meaning of "property of a public entity" or "public property" under section 830, subdivision (c). The "Law Revision Commission Comment" following section 830[2] notes that the exclusion of easements, encroachments and similar property from the meaning of "property of a public entity" is based upon the theory that it is the duty of the person or entity that owns the easement, encroachment or similar property to inspect such property for hazards, rather than being the duty of the owner of the servient estate. In the instant case it appears that the City has reserved unto itself under the ordinance the right to make such inspection, and therefore has a concomitant duty to inspect. Certainly, under the terms of the ordinance we cannot say that as a matter of law the City did not control the property under franchise or that it did not have the duty to inspect such property.

Having concluded that the subject right-of-way con-

[2]It is noted in *Van Arsdale* v. *Hollinger*, 68 Cal.2d 245, 249 [66 Cal.Rptr. 20, 437 P.2d 508], that reports of commissions which have proposed statutes that are subsequently adopted are entitled to substantial weight in construing the statutes, especially when the statute proposed by the commission is adopted by the Legislature without any change and where the commission's comment is brief, since in such situations there is reason to believe that the legislator's votes were based largely upon the commission's explanation in proposing the bill. Here, although the commission's comment is not brief, the proposed statute was adopted by the Legislature without any other than trivial changes. (See 1 Cal. Law Revision Com. Rep. 848.)

386

stitutes "public property," we now turn to the second count of plaintiff's complaint to ascertain whether he has alleged a "dangerous condition" of such property. ▮ Section 830, subdivision (a) defines a "dangerous condition" as ". . . condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." The meaning of this statutory definition is discussed in the aforementioned comment as follows: "A condition is not dangerous within the meaning of this chapter unless it creates a hazard to those who foreseeably will use the property or adjacent property with due care. Thus, even though it is foreseeable that persons may use public property without due care, a public entity may not be held liable for failing to take precautions to protect such persons. The definition would, however, take into consideration the standard of care that would be applicable to foreseeable users of the property. Where it is reasonably foreseeable that persons to whom a lower standard of care is applicable—such as children —may be exposed to a substantial risk of injury from the property, the public entity should be required to take reasonable precautions to protect such persons from that risk. Thus, a public entity may be expected to fence a swimming pool or to fence or lock up a dangerous instrumentality if it is reasonably foreseeable that small children may be injured if such precautions are not taken."

▮ ▪The question whether a dangerous condition existed that caused the plaintiff's injury is, as a general rule, one of fact, although it may be determined as a matter of law if reasonable men can draw but one conclusion from the evidence presented. (*Branzel* v. *City of Concord*, 247 Cal.App.2d 68, 73 [55 Cal.Rptr. 167]; *Aguirre* v. *City of Los Angeles*, 46 Cal.2d 841, 844 [299 P.2d 862]; *Gray* v. *Brinkerhoff*, 41 Cal.2d 180, 183 [258 P.2d 834].) In the instant case we must decide whether it can be concluded from the facts pleaded in the complaint that an unguarded railroad operation on Lowell Street near a grammar school created a substantial risk of injury to children using Lowell Street and exercising what for them would constitute due care. (See *Callahan* v. *City & County of San Francisco*, 249 Cal.App.2d 696, 703-704 [57 Cal.Rptr. 639] [hearing den. 5-17-67].) As noted in *Callahan*. the test is whether the condition created a substantial risk of harm to *persons, generally,* who would use the public property

with due care in a forseeable manner. (Pp. 702-703; see also Van Alstyne, California Tort Liability [Cont.Ed.Bar. (1964)] p. 195.) Accordingly, in order to prove his case, plaintiff must show "that the condition was one that created a hazard to *a person* who foreseeably would use the property or adjacent property with due care." (Italics added.) (Law Revision Com. Comment, § 830; *Callahan* v. *City & County of San Francisco, supra.*) He need not, however, allege that he was free from contributory negligence since contributory negligence is a matter of defense under subdivision (b) of section 815. (*Callahan* v. *City & County of San Francisco, supra,* at p. 703.)

 Applying the foregoing principles to the facts pleaded in plaintiff's second count, we cannot conclude that as a matter of law the subject public property did not constitute a dangerous condition. In the light of the allegations that children going home from school on Lowell Street customarily were attracted to the trains and railroad cars and played about them, it is not unreasonable to conclude that children were foreseeable users of the railroad right-of-way, that such use and the danger inherent therein were reasonably foreseeable, that the City was required to take reasonable precautions to protect children from that risk, and that plaintiff child was a person exposed to such risk. In this connection we note that standards of care for minors have always been much lower than those for adults, and that in dealing with a young child one must exercise greater caution than in dealing with an adult. (See *Schwartz* v. *Helms Bakery, Limited,* 67 Cal.2d 232, 240 [60 Cal.Rptr. 510, 430 P.2d 68]; *Hilyar* v. *Union Ice Co.,* 45 Cal.2d 30, 36 [286 P.2d 21]; *McKay* v. *Hedger,* 139 Cal.App. 266, 274 [34 P.2d 221].) Accordingly, in this state the cases have found foreseeable many types of injuries to children arising out of childish carelessness, immaturity or heedlessness to danger. (See *Schwartz* v. *Helms Bakery Limited, supra; Hilyar* v. *Union Ice Co., supra; McKay* v. *Hedger, supra; Holder* v. *City of Santa Ana,* 205 Cal. App.2d 194 [22 Cal.Rptr. 707]; *Gallipo* v. *City of Long Beach,* 146 Cal.App.2d 520 [304 P.2d 106]; *Torkelson* v. *City of Redlands,* 198 Cal.App.2d 354 [17 Cal.Rptr. 899].)

Of particular interest is *Gallipo, supra.* There the defendant city owned, operated and maintained a bridge which served vehicular traffic but did not have a pedestrian walkway. Just outside the railing of the bridge a gas pipe one foot in diameter was attached to it. The pipe ran parallel and

almost horizontal with the lower railing and had two planks flanking it which rested on the structure supporting the pipe. There was no barrier at either end of the approaches to the bridge to prevent pedestrians from walking upon the pipe or the planks. Plaintiff, an 8-year-old boy who had walked along the pipeline to cross the bridge once or twice a week over a period of two years, fell from the bridge while walking along the pipeline and sustained injuries. Several witnesses testified that children were wont to play near the bridge and cross it over the pipeline. There was no dispute that the city knew the conditions of the bridge and the pipeline. There was evidence, also, that the city's officers knew that young children congregated about the bridge and that young children crossed it in going and coming from nearby grammar schools. The appellate court, in reversing a judgment of nonsuit, held that the city's liability was governed by the Public Liability Act (the predecessor to the Tort Claims Act) and the principles developed in construing the act, and that whether a given set of circumstances creates a dangerous or defective condition is normally to be determined by the trier of fact. The appellate court observed that the city had the duty to keep its streets in a reasonably safe condition for travel by the public, that the city could be liable for failure to guard against accidents due to a dangerous or defective condition though the condition exists off the traveled portion of the highway so long as the condition is connected with or in close proximity to the traveled portion so as to render the highway unsafe for those traveling thereon, and that the jury could find that the absence of a proper barrier across the pipeline structure made the bridge dangerous in view of the city's duty to take action reasonably necessary to protect the public against a condition from which a risk of injury to pedestrians is reasonably to be foreseen.

 We conclude, therefore, that sufficient facts are pleaded in the second count showing that the City could reasonably foresee that children would be attracted to trains and railroad cars operating over and upon Lowell Street, and that children might be injured if reasonable precautions were not taken to protect them from that risk. These allegations, when coupled with the allegation that such precautions were not taken and that plaintiff, a 6-year-old child, was attracted

to such trains and sustained injuries when thrown under the wheels thereof, suffice, with the other allegations hereinabove alluded to, to state a cause of action.[3]

The cases of *Demmer* v. *City of Eureka,* 78 Cal.App.2d 708 [178 P.2d 472] and *Howard* v. *City of Fresno,* 22 Cal.App.2d 41 [70 P.2d 502], are clearly distinguishable. In *Demmer* the injured minor plaintiff left a city street and paddled about on a log in an adjacent pond; in *Howard,* children in a city park left the playground area and were burned while playing in a remote trash burning area. In *Branzel* v. *City of Concord, supra,* 247 Cal.App.2d 68, we pointed out that the decisions adverse to the plaintiffs in *Demmer* and *Howard* were predicated upon the ground that it was not reasonable that the pond or the trash burning area would be used as a playground.

The foregoing principles are likewise applicable to the third count which, as we have hereinbefore pointed out, pleads facts predicated on the theory that if the City does not own or control the railroad right-of-way it is nevertheless liable to plaintiff on the basis that the City's public property consisting of that portion of Lowell Street running along the right-of-way is dangerous because a condition on the adjacent right-of-way exposes those using the public property to a substantial risk of injury. In this connection we note that the condition of property defined as a "dangerous condition" in subdivision (a) of section 830 includes "adjacent property."

The Law Revision Commission Comment to section 830 states in part: " 'Adjacent property' as used in the definition of 'dangerous condition' refers to the area that is exposed to the risk created by a dangerous condition of the public property. . . . Under the definition as it is used . . . , a

---

[3]We note that liability under the Tort Claims Act rests upon the existence of a "dangerous condition" as defined in the act and in the principles developed in construing the act, and that such liability is separate and apart from liability predicated through the doctrine of attractive nuisance. (See *Gallipo* v. *City of Long Beach, supra,* 146 Cal.App.2d at p. 526.) Accordingly, cases like *Gutirrez* v. *Southern Pac. Co.,* 174 Cal.App.2d 866 [345 P.2d 326] and *Herrera* v. *Southern Pac. Co.,* 188 Cal.App.2d 441 [10 Cal.Rptr. 575] are distinguishable. Those cases involved situations where children, who were injured while playing or riding on railroad cars, were trespassers and the attractive nuisance doctrine was invoked. In *Gutirrez,* involving a 14-year-old boy, it was held that the allegations of the complaint were insufficient to meet the requirements of the attractive nuisance doctrine because the danger was obvious and should have been appreciated by a child of that age. In *Herrera,* a judgment of dismissal after a nonsuit was granted was affirmed as to a 13-year-old boy, on the same basis.

public entity cannot be held liable for dangerous conditions of 'adjacent property.' A public entity may be liable only for dangerous conditions of its own property. But its own property may be considered dangerous if . . . a condition on the adjacent property exposes those using the public property to a substantial risk of injury.''

In *Branzel* v. *City of Concord, supra,* 247 Cal.App.2d 68, a case arising under former section 53051 providing for liability of a public entity for a defective or dangerous condition of public property, we took cognizance of the fact that said section had been supplanted by new sections of the California Tort Claims Act (§§ 830-840.6)[4] dealing with liability of public entities for dangerous conditions of public property (p. 71, fn. 5), and we particularly noted that the new sections in point (§§ 835 and 830, subd. (a)) indicated no material changes in the law applicable to the facts then before us. (Pp. 72-73, fn. 6.) In holding that a municipality's flying field for model airplanes could constitute a dangerous condition (under former § 53051) because of its close proximity to the high voltage lines of a public utility, we specifically noted, in discussing the unreasonableness of the risk there involved, that under the new sections (§§ 835 and 830, subd. (a)) it is specifically provided that the property of a public entity may be considered dangerous if a condition on adjacent property exposes those using public property to a substantial risk of injury. (Pp. 72-73, fn. 6.)

We are satisfied, moreover, that no case arising under former section 53051 has held that the injury must occur on the public property in order for liability to attach. Thus, in *Marsh* v. *City of Sacramento,* 127 Cal.App.2d 721 [274 P.2d 434], a city was held liable for injuries sustained by a pedestrian as a result of a fall from the edge of a sidewalk into an excavation on private property adjacent to the sidewalk upon the rationale that a sidewalk whose surface was without defect could nevertheless be made dangerous for use by conditions existing without its boundaries. (P. 724.) *Beyer* v. *City of Los Angeles,* 229 Cal.App.2d 378 [40 Cal.Rptr. 341], relied on by the City, is clearly distinguishable. There the plaintiff drove her car off a public road and struck a water valve about four feet away from the dirt shoulder and entirely on a privately-owned strip of land. The reviewing court affirmed a judgment of nonsuit on the basis that the water valve was not a menace to anyone using the street or shoulder of the road in

[4]These sections became effective September 20, 1963.

its normal and customary manner. The court did not state, however, that recovery was barred because the injury took place off the street, but rather because there was no foreseeable risk of injury to users of the street inherent in the water valve. In the instant case, however, plaintiff alleges that the presence of the trains did cast a risk of injury over customary users of the street.

The City further relies on a statement from McQuillin, Municipal Corporations, that the general rule is that a municipality, by granting a public service company the right to use its streets, does not become liable for injury to private rights resulting therefrom. (12 McQuillin, Municipal Corporations, § 34.73, p. 242.) Most of the cases cited in the foregoing rule from McQuillin merely hold that in granting a franchise to a railroad a municipality does not become liable to owners of property adjoining the right-of-way. Two of the cases appear to articulate the principle that the city is not liable for the railroad's negligent acts, a principle which we do not contest. (*Frith* v. *Dubuque*, 45 Iowa 406, 412; *Green* v. *Portland*, 32 Me. 431, 434.) However, none of the cases cited in support of the foregoing rule discuss statutes analogous to the California Tort Claims Act. Although this act provides local government entities various specific defenses and immunities, it nowhere states that a city may escape liability for the operations of a public service company, such as a railroad, which operations cause public property to be in a dangerous condition.

The City claims that no case purports to hold a governmental entity liable for injury caused by the activity of others, as distinguished from conditions on its own property. Plaintiff does not allege, however, that the intervening negligence of the railroad company was the sole proximate cause of the injury, but rather that the street is in a dangerous condition by reason of the very presence of the unguarded railroad tracks. Thus, this case is distinguishable from such cases as *Campbell* v. *City of Santa Monica*, 51 Cal.App.2d 626 [125 P.2d 561], and *Seybert* v. *County of Imperial*, 162 Cal.App.2d 209 [327 P.2d 560].[5] We note, moreover, that in *Marsh* v. *City*

[5] In *Campbell*, the harm was caused by a negligent motor vehicle operator on a city Promenade. In *Seybert*, the injury was caused by a negligent motor boat operator and the charge was negligent failure to regulate motor boat traffic on a public lake. These cases merely establish that the city is under no duty to regulate traffic and that it is not responsible for the negligent acts of intervening third parties. Here, plaintiff relies not only on the negligence of the railroad company but on the danger inherent in the entire physical layout of the tracks in the vicinity of the school.

*of Sacramento, supra,* 127 Cal.App.2d 721, where the excavation was negligently constructed by a private property owner, liability was nevertheless held to exist because the City had ample notice of the unguarded condition and opportunity to remedy it.

In reaching the foregoing conclusions we are not unmindful of our recent decision in *Avey* v. *County of Santa Clara,* 257 Cal.App.2d 708 [65 Cal.Rptr. 181], where we held that a city and a county could not be held liable for an alleged dangerous condition of a public highway and an adjacent island strip consisting of the lack of a barricade at a bus stop for children which might have rendered a store on the opposite side of the thoroughfare inaccessible or unattractive to children waiting at the bus stop. Our holding was predicated upon the basis that the highway and the island strip were owned and controlled by the state, that neither the city nor the county had authority to remedy the situation, and that such a barricade was not required in the exercise of ordinary care by the city and county to maintain their streets in a reasonably safe condition in the absence of a showing on the part of plaintiffs as to what type of barricade would accomplish the desired result without at the same time interfering with the public right to enter the store in question, to enter and leave vehicles parked on the thoroughfare, and generally to use that thoroughfare with its adjacent curbs and sidewalks, (Pp. 712-713.) Further, in *Avey* we were dealing with a summary judgment; here we are concerned with whether the complaint states a cause of action. Accordingly, by this opinion we do not purport to foreclose the presentation of other issues of fact which may arise upon the filing of the answer; nor do we purport to give judicial recognition to the truth of the facts alleged in the complaint which we are required to accept as true in considering a general demurrer.

 Adverting, lastly, to the fourth count, we conclude that it does not state a cause of action because no facts are stated indicating that the City had a duty to instruct or supervise plaintiff.[6]

---

[6]We note that the recent case of *Gilbert* v. *Sacramento Unified School Dist.,* 258 Cal.App.2d 505 [65 Cal.Rptr. 913], relying on *Wright* v. *Arcade School Dist.,* 230 Cal.App.2d 272 [40 Cal.Rptr. 812], has held that a school district is under no active duty to supervise children on their way home from school and hence is not liable for the death of a 6-year-old child who was killed on her way home from school when she was crossing a railroad track and was struck by a train. The complaint in that case alleged that the school district knew that the decedent and other children customarily crossed the tracks when there was a train scheduled and had

The judgment is reversed with directions to the trial court to overrule the general demurrer to the second and third counts of the complaint, and to rule on the points presented by the special demurrer to said counts in conformity with the views expressed in this opinion. Plaintiff shall recover costs on appeal.

Sims, J., and Elkington, J., concurred.

A petition for a rehearing was denied April 17, 1968, and respondent's petition for a hearing by the Supreme Court was denied May 22, 1968.

previously been urged to change the school boundaries to obviate the need of children crossing the tracks. It would seem to follow *a fortiori* from *Gilbert* that the City had no duty to plaintiff to supervise his going to and from school and that no liability of the City can be predicated on such a theory in this case.