**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1393-17T2

ANTHONY VICTOR,

    Plaintiff-Appellant,

v.

BOROUGH OF RED BANK, and
BOARD OF EDUCATION OF
RED BANK,

    Defendants-Respondents.

_____

Submitted June 19, 2018 - Decided  September 27, 2018

Before Judges Nugent and Accurso.

On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-2293-15.

The Clancy Law Firm, PC, attorneys for appellant (Donna H. Clancy, on the briefs).

Orlovsky, Moody, Schaaff, Conlon & Gabrysiak, attorneys for respondents (Michael E. McGann, of counsel and on the brief; Allison A. Krilla, on the brief).

PER CURIAM

In this Title 59 matter, plaintiff Anthony Victor appeals from the entry of summary judgment dismissing his complaint against defendants Borough of Red Bank and its Board of Education. Because we agree that summary judgment was properly granted to the Borough and its Board on the undisputed facts, we affirm.

The essential facts are these. Plaintiff went to Red Bank's Count Basie Field to watch his grandson's baseball game. He described the accident as follows:

> [I]t was a beautiful Sunday. I had gotten a cup of iced coffee. And I normally have a fairly quick gait 'cause that's the way I walk. And I was walking on the walkway toward the game. I saw him out in the batting cage. And I didn't see the bench across the path and I went flying over it.

The bench plaintiff tripped over was a dugout bench that the Borough moved between fields as needed to provide players a place to sit during games or practices. The parties agree it was a portable aluminum bench with a back rest. The bench was approximately twenty-one feet long and held up by four vertical supports each terminating in a perpendicular metal bar two inches in diameter. Each of the four bars extended fifteen inches beyond the back of the bench. The bench was behind some metal bleachers on a concrete pad next to one of the fields, facing the same way as the bleachers. Plaintiff was walking

A-1393-17T2

behind the bleachers across the pad to reach the batting cages and another field. He testified at deposition that he had walked almost the entire length of the bench when his right foot tripped on the last support.

When asked why he failed to see the bench's metal supports as he walked along behind it, plaintiff replied, "I was walking and, as I said before, one of the boys was in the batting cage, you know, I was headed — I was looking straight ahead. When I walk I don't look at the ground. Just a normal walk to the field." That led to the following exchange:

Q: So what did Red Bank do wrong?

A: Well, apparently that bench shouldn't be in the walkway. It's a bench I guess for people to watch the games. I don't know why it was in the walkway.

Q: But I mean it was obvious it was there, correct?

A: Correct.

Q: It wasn't a surprise, it wasn't dark out or anything, right?

A: Correct.

. . . .

Q: It was plain to your vision, it was plain and obvious?

A: [Counsel], if I had seen it, I wouldn't have tripped over it. I didn't see it.

Q: I know but why didn't you see it?

A: Because I wasn't looking down.

Although plaintiff referred to where he tripped as a walkway, his expert and the Borough's witnesses described it as a concrete pad or slab adjacent to the third base line of field number two, on which stand permanent bleachers for spectators. Although not part of a continuous walkway, the Borough acknowledged that some spectators cut across the pad to reach the batting cages.

Following discovery, defendants moved for summary judgment contending plaintiff could not demonstrate the property was in a dangerous condition or that the placement of the bench was palpably unreasonable. Plaintiff opposed the motion, contending that the placement of the bench on the pad constituted a dangerous condition and whether it was palpably unreasonable was a jury question.

After reviewing the applicable case law, the judge concluded the bench itself was not dangerous and "as positioned is only potentially dangerous to those who do not make observations." Satisfied the case did not present "a close call," the judge concluded that

[e]ven giving Mr. Victor the benefit of all reasonable inferences, he's not using the park with due care. He's not watching where he's going. It's his own testimony. He's walking quickly, wants to get to the ball game, wants to see his grandchild play. All the types of things you, you know, you admire about grandfathers being involved in their grandkids' lives. I get it completely. But you still have the duty to watch where you're going. And I don't think any reasonable fact finder could find otherwise.

Plaintiff appeals, contending the trial court failed to apply the correct legal standard and that he "met the standard of due care by walking across a known pedestrian walkway looking straight ahead" and that "[s]ummary judgment should have been denied based upon an issue of fact as to proximate cause." Plaintiff argues that "leaving a dugout bench with 15" metal bars protruding from the back of a bench that were hidden from view by pedestrians walking normally on a pathway was a dangerous condition created by Defendants" and because "reasonable minds can differ as to whether Defendants acted in a palpably unreasonable manner," the question is for the jury. We disagree.

5

We review summary judgment using the same standard that governs the trial court.[1]  Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584 (2012). Thus, we consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536 (1995)).

N.J.S.A. 59:4-2 addresses a dangerous condition of public property and provides as follows:

> A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
>
> a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

---

[1]  Because we apply the same standard as the trial judge and review questions of law de novo without deference to interpretive conclusions we believe mistaken, Nicholas v. Mynster, 213 N.J. 463, 478 (2013), Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995), we need not address plaintiff's argument that the trial judge misapplied the summary judgment standard.

b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.

Thus "to impose liability on a public entity pursuant to that section, a plaintiff must establish the existence of a 'dangerous condition,' that the condition proximately caused the injury, that it 'created a reasonably foreseeable risk of the kind of injury which was incurred,' that either the dangerous condition was caused by a negligent employee or the entity knew about the condition, and that the entity's conduct was 'palpably unreasonable.'" Vincitore v. N.J. Sports & Exposition Auth., 169 N.J. 119, 125 (2001).

As defendants did not dispute that plaintiff was injured by tripping over the bench the Borough placed behind the bleachers on the concrete pad, the focus on the motion was whether the concrete pad, where spectators were known to walk, was in a dangerous condition and, if so, whether the failure to correct it was palpably unreasonable. The Tort Claims Act, N.J.S.A. 59:1-1 to 12-3, defines "dangerous condition" as "a condition of property that creates a

7

substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." N.J.S.A. 59:4-1(a).

As we have elsewhere explained, "the phrase 'used with due care' does not refer to the actual activities of the parties," but to "the condition of the property itself." Daniel v. State, Dep't of Transp., 239 N.J. Super. 563, 586 (App. Div. 1990). "In deciding whether a dangerous condition exists," the question is "whether the property creates a substantial risk of injury 'to persons generally, who would use the property with due care in a foreseeable manner.'" Id. at 587 (quoting Holmes v. Oakland City, 67 Cal. Rptr. 197, 203 (Ct. App. 1968)). Thus a "plaintiff must show 'that the condition was one that created a hazard to a person who foreseeably would use the property . . . with due care.'" Ibid.

Applying that standard makes clear the trial court was correct to find plaintiff failed to establish the Borough's placement of the bench behind the bleachers rendered the concrete pad in a dangerous condition to a person who foreseeably would walk behind the bleachers to access the batting cages or one of the other fields. As plaintiff testified, there was nothing obscuring his view of either the bench or the bleachers. He tripped over one of the bench supports

after walking almost the entire length of the bench only because he "wasn't looking down."[2]

Because "it would be folly to impose a burden on a public entity to protect individuals from every conceivable risk attendant to the use of its property," the Legislature has limited liability from a dangerous condition to those instances where "the property poses a substantial risk of injury when it is used in a reasonably prudent manner in a foreseeable way." Daniel, 239 N.J. Super. at 587. Because, as the trial judge found, the bench "as positioned [was] only potentially dangerous to those who [did] not make observations," it did not pose a substantial risk of injury to those persons crossing the pad "in a reasonably prudent manner in a foreseeable way." Ibid.

Even were plaintiff able to somehow establish that placement of the bench behind the bleachers constituted a dangerous condition, he has provided no proof that the Borough's placement of the bench or failure to move it was

---

[2] We note the obvious nature of the bench and its supports would make it difficult for plaintiff to recover against an owner without statutory immunities, that is, had he been a guest on private property when the injury occurred. See Tighe v. Peterson, 356 N.J. Super. 322, 326 (App. Div.) ("Where a guest is aware of the dangerous condition or by a reasonable use of his [faculties] would observe it, the host is not liable.") (internal quotation marks omitted) (quoting Endre v. Arnold, 300 N.J. Super. 136, 142 (App. Div. 1997)), aff'd o.b., 175 N.J. 240 (2002).

palpably unreasonable, that is "manifest and obvious that no prudent person would approve of its course of action or inaction," <u>Kolitch v. Lindedahl</u>, 100 N.J. 485, 493 (1985) (citation omitted), and certainly none sufficient to require submission to a jury, <u>see</u> <u>Brill</u>, 142 N.J. at 536.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1393-17T2