[Civ. No. 18268.   First Dist., Div. One.   Oct. 30, 1959.]

JOHN GUTIRREZ, a Minor, etc., Appellant, v. SOUTHERN
PACIFIC COMPANY (a Corporation) et al., Re-
spondents.

Jack Miller, Duncan Davidson and Kroloff, Brown, Belcher & Smart for Appellant.

Bledsoe, Smith, Cathcart, Johnson & Phelps, Robert A. Seligson, Boyd, Taylor, Nave & Flageollet and Hagar, Crosby & Rosson for Respondents.

WOOD (Fred B.), J.—Judgments of dismissal in favor of each of the three defendants were entered after failure of the plaintiff to further amend, following the sustaining of defendants' general and special demurrers to plaintiff's second amended complaint, with leave to amend.

(1) *In the first count of the complaint* plaintiff seeks to hold the Southern Pacific Company, the Western Pacific Railroad Company and the Valley Ice Company responsible for injuries received by him while playing on or about the railroad tracks at Stockton.

The significant allegations may be summarized as follows:

Valley Ice kept, maintained and operated an ice house immediately east of two sets of railroad tracks belonging to

and maintained, owned and kept by the Western Pacific, and was engaged in selling and loading ice in refrigerated box cars belonging to Western Pacific. Immediately to the west of the Western Pacific's tracks there were two sets of tracks belonging to and kept, operated and maintained by the Southern Pacific. The ice house is "just south" of the 6th Street crossing of said tracks.

The ice house and these tracks and other tracks adjoining them are on land which is constantly crossed by children and adults with defendants' consent and permission. Defendants have permitted children to use the area as a playground and to cross the tracks on various errands and on the way to and from school.

Among these tracks are the main line tracks of each railroad company. There is a steady stream of railroad traffic, and "numerable" refrigerated box cars on the tracks adjoining the ice company for the purpose of being iced. The box cars and the moving trains are inherently dangerous to any person in the vicinity or who might come in contact therewith. Children coming in contact with the moving trains were afforded no protection therefrom. Defendants knew or should have known that the same would be attractive to children and expose them, including plaintiff, to probable injury, they because of their age being unable to foresee, comprehend and avoid the danger.

None of this area was enclosed by a fence or any other barrier. It was inadequately policed and watched over by defendants. Children were afforded ready access to it and were in constant danger of being run over by trains belonging to or operated by defendant railroad companies.

The refrigerated box cars and the movement of the trains in said area constituted an invitation for children to play upon the cars and along the tracks and in the vicinity of moving trains, in accordance with the propensities and practices of children, all of which defendants knew or should have known. The defendants were well aware of the presence of children in this area.

On March 22, 1956, plaintiff was playing with another child on refrigerated box cars in this location. These cars were placed there by Western Pacific. They had been or were being or were waiting to be loaded by Valley Ice. While playing there, plaintiff saw an oncoming train operated by the Southern Pacific and because the train was coming on an adjoining track, he became scared, came down from the box car, ran

along the tracks between the box cars and the moving train, and fell under the wheels of the train, receiving serious and permanent injuries.

In such a case as this the applicable rules of law are those stated in section 339 of the Restatement of the Law of Torts. (*Reynolds* v. *Willson,* 51 Cal.2d 94, 103 [331 P.2d 48]; *Courtell* v. *McEachen,* 51 Cal.2d 448, 457 [334 P.2d 870]; *Garcia* v. *Soogian,* 52 Cal.2d 107, 110 [338 P.2d 433].) The text of section 339 is set forth in each of these cases and need not be repeated here. (Pp. 98 and 457 of 51 Cal.2d and 110 of 52 Cal.2d.)

These allegations meet the requirements of clause (a) of section 339: "the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass." They also meet the requirements of clause (b) of section 339: "the condition is one which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children."

We doubt if plaintiffs' allegations meet the requirements of clause (c) of section 339: "the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it." Here the danger was obvious, that of moving railroad trains. No adult in possession of his faculties could claim nondiscovery of the danger or nonrealization of the unreasonable risk which entering the area, or intermeddling, would entail. It is difficult to imagine that a 14-year-old boy of average intelligence would be lacking in similar powers of perception. There is no suggestion that this 14-year-old is subnormal in any respect.

We believe we are confirmed in this view by the holding of our Supreme Court in *Garcia* v. *Soogian,* 52 Cal.2d 107, *supra.* A girl 12 years and 8 months old was injured while trying to jump over a stock of prefabricated building panels that contained windows. The court said: "The ability to appreciate danger varies, of course, with the age of the child, and there can be no recovery if the child is of sufficient age and mental capacity to look out for himself under the circumstances presented. (See Prosser on Torts (2d ed. 1955) 441, 443-444; 2 Harper and James, The Law of Torts, 1453-1454.)

"As we have seen, the panels containing windows were heavy and were firmly stacked a considerable distance from the street in such a manner that the glass could be reached

only at the top of the piles, 24 to 30 inches from the ground. The chance was slight that a child of plaintiff's age would fail to see the glass or appreciate what risk was presented, and there is no evidence that plaintiff was of less than average intelligence for her age. It may be, as plaintiff in effect testified, that, because it was getting dark, she did not see the glass before jumping, but defendants could not reasonably be required to foresee that there was any substantial likelihood that a normal child of more than 12 would not appreciate the danger of jumping over a large pile of building materials when darkness prevented sufficient perception of the nature of the obstacle. In the light of the undisputed facts now before us, there is no sound basis for concluding that the condition which caused plaintiff's injury should have been recognized as constituting an unreasonably great risk of serious bodily harm which plaintiff was unable to discover or appreciate because of her immaturity." (Pp. 112-113.)

We realize that those words were uttered after a trial but it would not seem to require a trial to prove the obvious dangers and risks attendant upon loitering or playing in the railroad yard here described and the awareness of such dangers and risks which a 14-year-old boy of average intelligence would possess. If he is subnormal in that regard the complaint, we believe, should so indicate.

■ Nor do we think the allegations of the first count meet the requirements of clause (d) of section 339: "the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein." In this connection, plaintiff merely alleged the area was not adequately policed or watched over and was not enclosed by a fence or other barrier. Nothing is said about the feasibility or relative utility of such measures. This area abuts a street crossing, as alleged. That itself suggests a question as to the feasibility and effectiveness of a fence.

In a number of cases it has been held necessary to allege facts that establish every element of the attractive nuisance doctrine. (*Ward* v. *Oakley Co.*, 125 Cal.App.2d 840, 845-851 [271 P.2d 536], and other cases cited in 2 Witkin, California Procedure, 1260-1261, Pleading, § 286.) The same principle would apply when pleading a cause of action under section 339 of the Restatement.

■ Western Pacific and Valley Ice claim the first count is insufficient as to them for the additional reason that the injury did not occur on their property. We think this point also is

well taken. (See *Corcoran* v. *City of San Mateo*, 122 Cal.App. 2d 355, 359-360 [265 P.2d 102, 39 A.L.R.2d 1448].)

In view of the conclusions indicated, we deem it unnecessary to consider the rulings on the several special demurrers to the first count.

(2) *The third and fourth counts* are identical except that one pertains to the Southern Pacific, the other to the Western Pacific.

Each, by reference to designated paragraphs of the first count, alleges that the defendant is a railroad utilities corporation that operated a railroad in the city of Stockton; "[t]hat none of said area was enclosed by a fence or any other barrier; that said area was inadequately policed and watched over by the said" defendant and that "children were afforded ready access to the said area and were in constant danger of being run over by trains belonging to or operated by the said defendant"; and that plaintiff is 14 years old. Each then alleges that on March 22, 1956, just south of the 6th Street crossing of its tracks, the defendant railway company so negligently kept and maintained its tracks and the land surrounding the same that as a proximate result plaintiff was run over by a Southern Pacific train and received the injuries described in paragraph XVI of the first count.

Each is a truncated version of the first count. Consequently, each falls still further short of stating a cause under section 339 of the Restatement than does the first count.

Each does allege, in general terms, that the defendant so "negligently" maintained its tracks and the surrounding land that plaintiff was run over by a train. The alleged causative factor is not the train and its operation. It is "a structure or other artificial condition which he [the possessor of the land] maintains upon the land," if we may quote from the introductory clause of section 339. However, the other essential elements of section 339 are lacking. These allegations seem to fit the "general rule" stated. in *Knight* v. *Kaiser Co.*, 48 Cal.2d 778, 781 [312 P.2d 1089] : ". . . where a person goes upon the premises of another without invitation, as a bare licensee, and the owner passively acquiesces in his presence, if any injury is sustained by the licensee by reason of a mere defect in the premises the owner is not liable for negligence, for the licensee has assumed the risk himself. The owner of property does not assume any duty to one who is on his premises by permission only and as a mere licensee, except for wanton or willful injury inflicted upon the licensee while on

the premises.'' (See also *Palmquist* v. *Mercer*, 43 Cal.2d 92, 101-102 [272 P.2d 26]; *Oettinger* v. *Stewart*, 24 Cal.2d 133, 137-138 [148 P.2d 19, 156 A.L.R. 1221].) We find here no element of ''wanton or willful injury'' alleged.

Even if the third and fourth counts be viewed as attempts to plead liability under section 340 or section 342 of the Restatement, there is no averment that plaintiff did not ''know of the condition and realize the risk involved therein'' (§ 340) or that defendant had ''reason to believe'' that plaintiff would ''not discover the condition or realize the risk'' (§ 342).

In respect to the third and fourth counts we see no basis for disturbing the judgments.

■ (3) *The allegations of the second count of the complaint* are the same as those of the third count in all respects except an averment that the Southern Pacific so negligently operated and controlled a locomotive and train attached thereto as to cause the same to run into and collide with plaintiff (instead of the averment in the third count that the Southern Pacific so negligently maintained its tracks that plaintiff was run over by one of its trains).

In the second count we have active, not mere passive, negligence alleged. This is quite different from the mere maintenance of a dangerous condition alleged in the other counts. The second count does state a cause of action, as we read the decisions in *Smithwick* v. *Pacific Elec. Ry. Co.*, 206 Cal. 291, 299-305 [274 P. 980], and *Staggs* v. *Atchison, Topeka & S.F. Ry. Co.*, 135 Cal.App.2d 492, 495 and 500-501 [287 P.2d 817]. In the Staggs case, the court epitomized the applicable rule in these words: ''Whether defendant was guilty of negligence toward Donald depends upon the duty, if any, owed by it to him, which, in turn, depends upon whether defendant's employees had reason to expect the presence of human beings upon the tracks or right-of-way at the time and place of the accident.'' (P. 495 of 135 Cal.App.2d.)

We think the second count meets the requirements of this rule, especially in the light of the long established principle that the breach of such a duty may be pleaded in general terms. (See 2 Witkin, California Procedure, 1262-1266, Pleading §§ 288-292, and authorities there collected.)

The Southern Pacific mistakenly makes the argument that the second count should be viewed as merely a pleading in conclusionary terms of the facts specifically averred in the first count; hence, vulnerable to a general demurrer precisely as the first count is vulnerable. It invokes the rule that a common count is viewed as a mere statement, in general terms,

of the specific facts set forth in another count of the same complaint in an action upon a contract, and those cases which hold (in a quiet title suit) that, if title is deraigned in one count and ownership is pleaded in general terms in another, any defects disclosed by the former infect the latter.

That is not the situation here. Plaintiff pleads negligent operation of a train in the second count as distinguished from negligence in the maintenance of a dangerous condition in the other counts. These are separate and distinct theories, permissible for a plaintiff to plead in one and the same complaint. (2 Witkin, California Procedure 1160-1162, Pleading, §§ 181-182.)

Nor do we deem the second count vulnerable to the special demurrers that were directed to it. Counsel for plaintiff reminds us of the difficulty of knowing precisely how such an accident as this took place and represents that it would be an undue burden to require more detailed specifications of how it happened. (See *Hitson* v. *Dwyer*, 61 Cal.App.2d 803, 809 [143 P.2d 952].) Modern discovery and pretrial proceedings readily lend themselves to the development of such facts prior to trial. (See 2 Witkin, California Procedure 1269-1271, Pleading, § 295.)

The judgments in favor of Valley Ice Company and Western Pacific Railroad Company, respectively, are affirmed. The judgment in favor of the Southern Pacific Company is affirmed as to all counts of the complaint except the second count and as to the second count the judgment is reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

Bray, P. J., and Tobriner, J., concurred.

A petition for a rehearing was denied November 25, 1959.