[Civ. No. 34054. Second Dist., Div. Two. Feb. 5, 1970.]

ALFRED BEARD, a Minor, etc., Plaintiff and Appellant, v.
ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY,
Defendant and Respondent.

130

**COUNSEL**

Irving H. Green and Eliot B. Feldman for Plaintiff and Appellant.

John J. Balluff, Matthew H. Witteman, Henry M. Moffatt, Neal W. McCrory, John J. Schimmenti, and Richard L. Rosett for Defendant and Respondent.

**OPINION**

**FLEMING, J.**—Action for personal injuries. Plaintiff Alfred Beard, age 14, attempted to board a moving freight train operated by defendant Santa Fe Railway, fell onto the track, and lost both his legs beneath the wheels. In his first count he pleaded the railroad's negligence; in his second count its violation of the Federal Safety Appliance Act (45 U.S.C. § 11) in maintaining a box car sill step in an unsafe condition. Before trial defendant's motion for summary judgment was granted on the second count because plaintiff was not a person to whom a cause of action had been given by the Safety Appliance Act; at trial defendant's motion for a nonsuit on the first count was granted at the conclusion of plaintiff's case. Plaintiff appeals the judgment in favor of defendant on both counts.

## I

On 8 March 1963 in Los Angeles, plaintiff, a student in junior high school, was walking home from school with a group of his friends. As plaintiff and his friends crossed defendant's right-of-way adjacent to Slauson Avenue, a slow-moving (10-15 miles per hour) freight train came along, and two of the friends climbed aboard the train in order to ride it a short distance. After they had gotten on, plaintiff ran alongside the train, grasped the handle bar at the end of a box car, and attempted to pull himself aboard. According to plaintiff, as he placed his feet on the sill step of the box car 2½ feet above the ground the step wobbled and gave way, and he fell beneath the wheels of the train.

The train passed the point of the accident at the same time every after-

noon. The track was straight, and visibility was unobstructed, but a half block away there was a brick wall behind which children could hide from the view of the crew as the front of the train passed by. At the crossing where plaintiff entered the railroad right-of-way and at a point half a block along the track were signs which read: "Atchison, Topeka and Santa Fe Railway Company, Private Property, Keep Out." The train was manned by a crew of five, of whom three (two brakemen and the fireman) were charged with the duty to watch for persons attempting to board the train. At the scene of the accident these three had previously seen children walking near the tracks, hiding and ducking behind the wall, and approaching closely enough to the train to require either warning from the crew or emergency application of the brakes. They had also seen children actually boarding trains at other locations, but they did not know of any boarding or attempts at boarding at the point of the accident. However, a witness who worked across the street from the scene of the accident, as well as the two boys who boarded the train ahead of plaintiff, testified that at the point of the accident hopping and riding of the train by school children was a common, almost daily occurrence.

None of the crew was aware of the accident at the time it happened. The conductor had visually inspected the train's safety appliances, including its sill steps, shortly before the run on which the accident occurred. That evening an experienced car inspector checked every step on one side of the train with a flashlight and found no defects. Four other persons also inspected the train that evening.

Plaintiff was of average or slightly-below-average intelligence. He testified he did not realize the dangers involved in hopping rides on moving trains, and said he had never been warned of such dangers by his mother, his friends or anyone else. Although he had never previously attempted to hop a ride on a train, on several occasions he had seen other boys do so without mishap.

In granting defendant's motion for a nonsuit at the close of plaintiff's case, the trial court concluded that the Safety Appliance Act did not impose absolute liability on the railroad, that the Safety Appliance Act was not intended to benefit trespassing children and therefore its violation could not be used to establish negligence, and that two of the conditions required to impose liability on the railroad on the ground of attractive nuisance had not been met. (Rest. 2d Torts, § 339 (c) and (d).)[1] The trial court relied on a

---

[1]Section 339: "Artificial Conditions Highly Dangerous to Trespassing Children

"A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if . . .

"(c) the children because of their youth do not discover the condition or realize

series of cases holding that juveniles of plaintiff's age are deemed to have assumed the risks which result from boarding moving freight trains. (*Smith* v. *Southern Pac. Co.,* 222 Cal.App.2d 728 [35 Cal.Rptr. 575]; *Joslin* v. *Southern Pac. Co.,* 189 Cal.App.2d 382 [11 Cal.Rptr. 267]; *Herrera* v. *Southern Pac. Co.,* 188 Cal.App.2d 441 [10 Cal.Rptr. 575]; *Gutirrez* v. *Southern Pac. Co.,* 174 Cal.App.2d 866 [345 P.2d 326].)

Plaintiff argues that the evidence was sufficient to establish liability under any of the following theories: (1) violation of the Safety Appliance Act; (2) attractive nuisance (Rest. 2d Torts, § 339); (3) concealed trap (*Reynolds* v. *Willson,* 51 Cal.2d 94, 101-102 [331 P.2d 48]; (4) constant intruder (Rest. 2d Torts, §§ 334, 335.) Additionally he argues that the rule adopted in *Rowland* v. *Christian,* 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561], makes a possessor of property liable for negligence to a trespasser whenever the possessor's conduct foreseeably creates an unreasonable risk of harm.

The nonsuit in this case preceded the decision of the Supreme Court in *Rowland* v. *Christian,* and the trial court on the basis of doctrine as it then stood (Rest. 2d Torts, § 339) took the view that the burden rested on plaintiff to establish that because of his youth he did not realize and appreciate the risk of boarding a moving freight train. ■ On appeal, however, we must apply the law as it stands today. As the court said in *County of Los Angeles* v. *Faus,* 48 Cal.2d 672, 680-681 [312 P.2d 680]: "It is the general rule that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation and that the effect is not that the former decision was bad law but that it never was the law." (Cf. *Carlson* v. *Ross,* 271 Cal.App.2d 29 [76 Cal.Rptr. 209].)

## II

Because the judgment on the first count resulted from a nonsuit the specific question thereby presented is whether plaintiff satisfied its burden of establishing a prima facie case. The answer to this question is largely shaped by the substantive and procedural changes in the law brought about by *Rowland* v. *Christian,* 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561], which we now consider in terms of its effect on the parties' burden of proof.

Under *Rowland* v. *Christian,* the liability of a possessor of property to trespassing children is no longer limited by the conditions set out in Restate-

---

the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children·involved, . . ."

ment Second Torts, § 339 (approved in *King* v. *Lennen,* 53 Cal.2d 340 [1 Cal.Rptr. 665, 348 P.2d 98], and in *Smith, Joslin, Herrera,* and *Gutirrez* v. *Southern Pac. Co., supra*), or by the terms of other special doctrines and theories created as exceptions to a general rule barring trespassers from recovery for negligence, but is governed by Civil Code, secion 1714, which imposes general liability on every person for injuries occasioned to others by want of ordinary care in the management of his property. The status of a claimant at the time of his injury no longer affects the general duty of the possessor of property to exercise ordinary care with respect to reasonable foreseeable risks of personal injury to persons coming on the property. The possessor's duty of ordinary care extends to invitees and trespassers alike, although the foreseeability of injury, and hence the degree of care required of a possessor, continues to be influenced by the likelihood that persons will be present on the property at a particular time and place, a likelihood normally considerably greater for invitees than for trespassers. (Cf. *Rowland* v. *Christian,* 69 Cal.2d 108 at p. 119 [70 Cal.Rptr. 97, 443 P.2d 561].) The former gradations of degree in the possessor's duty of care, which varied with the status of persons on the property, have been superseded by a generic duty owed to all persons on the property based on the reasonable foreseeability of harm to them. Under *Rowland* v. *Christian* the extent of a possessor's duty is controlled by the foreseeability of the risk and not by the status of the person injured.

Since a person's status as a trespasser is now largely immaterial and no longer determines that he assumed the risk of personal injuries caused by a possessor's negligence, it follows that the various exceptions to the former rule prohibiting trespassers from recovery for negligence no longer serve their intended purpose. One such exception is that of attractive nuisance, an exception designed to permit children who would otherwise be barred from recovery by their status as trespassers to recover under certain conditions for injuries resulting from a possessor's negligence. A trespassing child could show that as a child he did not realize the risk involved in coming on the property, hence he had not assumed this risk, and therefore he qualified as an exception to the general rule of nonrecovery by trespassers against negligent possessors of property. Under the attractive nuisance exception a trespassing child had the burden of proving his lack of appreciation of the risk involved in coming on the property (i.e. rebutting the presumption that as a trespasser he assumed the risk) and also the burden of proving the feasibility to the possessor of eliminating the dangerous condition. (Rest. 2d Torts, § 339; *Joslin* v. *Southern Pac. Co.,* 189 Cal.App.2d 382, 387 [11 Cal.Rptr. 267].)

But under the new rule proof of trespass no longer creates a presumption that the trespasser took the property as he found it, and a tres-

passing adult need not rebut the presumption that he assumed the risk of the possessor's negligence in going upon the property. A fortiori, a trespassing child is entitled to the benefit of the same rule. Hence the defense of assumption of risk must be established by defendant in some manner other than mere proof that plaintiff was a trespasser. Defendant can no longer shift the burden on this issue to plaintiff by demonstrating that plaintiff was a trespasser. Since the burden of proving assumption of risk remains on defendant throughout, it follows that a trespassing child no longer need prove his lack of realization of the risk in order to rebut the presumption that he assumed it.

Consequently, while plaintiff has the burden of proving defendant's negligence, and defendant has the burden of proving plaintiff's contributory negligence, both as before, defendant now has the burden of proving assumption of the risk—for trespasser and invitee alike. (*Inouye* v. *Pacific Gas & Elec. Co.*, 53 Cal.2d 361, 367-368 [1 Cal.Rptr. 848, 348 P.2d 208].) With this critical change in the burden of proof in mind we briefly take up the main issues in the case.

To establish the railroad's negligence plaintiff relied on two factors. First, the railroad knew, or should have known, that children regularly hopped rides at this particular location on this particular train and negligently failed to take action to prevent such activity, either by maintaining a better lookout on the train or a stricter police of its right-of-way. Essentially, this factor was premised on the failure of the railroad to provide an adequate and effective warning system for those who it could anticipate might need it. Second, plaintiff charged the railroad with negligence in maintaining a loose sill step on a box car, which caused plaintiff to fall from the box car beneath the wheels of the train. Clearly, this second factor charged the maintenance of railroad property in a dangerous and defective condition in violation of a safety statute, a violation which, if true, would furnish some evidence of the railroad's negligence. (*Alarid* v. *Vanier*, 50 Cal.2d 617 [327 P.2d 897]; cf. Evid. Code, § 669.) Either factor, if given credence, might be sufficient to support plaintiff's claim that defendant had been negligent, for both involved a reasonably foreseeable risk of harm to others arising out of a want of ordinary care in the management of defendant's property. The contemporary test of negligence has been stated in *Dillon* v. *Legg*, 68 Cal.2d 728, at p. 740 [69 Cal.Rptr. 72, 441 P.2d 912]: "Since the chief element in determining whether defendant owes a duty or an obligation to plaintiff is the foreseeability of risk, that factor will be of prime concern in every case. Because it is inherently intertwined with foreseeability such duty or obligation must necessarily be adjudicated only upon a case-by-case basis." Judged by this standard each of the two factors relied on by plaintiff could qualify as proof of actionable negligence

under section 1714. (*Taylor* v. *Centennial Bowl, Inc.,* 65 Cal.2d 114, 121 [52 Cal.Rptr. 561, 416 P.2d 793]; *Laird* v. *T. W. Mather, Inc.,* 51 Cal.2d 210, 216 [331 P.2d 617].)

■ On the issue of assumption of risk the burden of proof rests on defendant to establish by a preponderance of the evidence (1) plaintiff's conscious assumption of the risk, which in the case of a juvenile encompasses his capacity to realize and appreciate the risk, and (2) the risk which plaintiff assumed was the one which proximately caused his injury. (*Vierra* v. *Fifth Ave. Rental Service,* 60 Cal.2d 266, 271 [32 Cal.Rptr. 193, 383 P.2d 777].) ■ On the subject of realization and appreciation of the risks involved in boarding a moving freight train plaintiff testified he did not know, and had never been told, that hopping a ride on a moving freight train was dangerous. This testimony was sufficient to present a question of fact on the issue of assumption of risk. While it is doubtful that a trier of fact would believe that plaintiff at the age of 14 did not know and had never been told about the danger involved in boarding a moving freight train, plaintiff made such a claim, and the burden fell on defendant to refute it in order to sustain its burden of proof with respect to plaintiff's realization and appreciation of the risk. The case is distinguishable from *Smith, Joslin, Herrera,* and *Gutirrez, supra,* in that in those cases the claimant either admitted knowledge of the danger of hopping moving freight trains or failed to aver his ignorance of the subject.

■ The particular risk assumed also presents a question of fact. Plaintiff avers the specific cause of his injury was a loose box car sill step, which, he contends, amounted to a risk he did not consciously assume. If the jury should find the existence of a loose sill step and a causal relationship between the defective step and plaintiff's injury, it might conclude that plaintiff had not assumed the particular risk which caused his injury. Since one cannot assume a risk of which one is unaware, a question of fact was presented whether plaintiff was aware of the particular risk which in fact materialized. (*Vierra* v. *Fifth Ave. Rental Service,* 60 Cal.2d 266, 271 [32 Cal.Rptr. 193, 383 P.2d 777]; *Crain* v. *Sestak,* 262 Cal.App.2d 478, 488 [68 Cal. Rptr. 849].) In *Bee* v. *Tungstar Corp.,* 65 Cal.App.2d 729, 733 [151 P.2d 537], an invitee who knew of the general danger in riding a bucket in the mine owners' aerial tramway did not know of the specific danger of an improperly spliced traction cable used to pull the bucket. The court found plaintiff had not assumed that particular risk, stating: "One who assumes the risks of dangers ordinarily incident to the use of an instrumentality does not assume the risk of danger created by the negligence of others in maintaining or operating the instrumentality. (*Gornstein* v. *Priver,* 64 Cal.App. 249, 258 [221 P. 396].) Decedent had no knowledge or means of knowledge that the cable had been improperly spliced and did not assume

the risk of negligence on the part of defendant's superintendent in splicing the cable."

On the issue of plaintiff's contributory negligence the burden of proof, now, as before, lies on defendant. The rules on contributory negligence outlined in Restatement Second Torts are applicable, and to establish the defense the defendant must show that plaintiff's conduct fell below the standard of care required of him in the light of his age, intelligence, and experience, and that as a consequence of this plaintiff was injured.[2] Had plaintiff's evidence showed contributory negligence as a matter of law the trial court's nonsuit would have been correct. (*Studer* v. *Southern Pac. Co.,* 121 Cal. 400, 404 [53 P. 942, 66 Am.St.Rep. 39].) However, it failed to do this in two respects comparable to those discussed on assumption of risk. First, whether plaintiff acted negligently in attempting to board a moving freight train depended on his age, intelligence, and familiarity with the dangers inherent in moving trains. We think the dangers connected with moving trains, like those connected with runaway horses and wild animals, may be less generally understood by juveniles today than they were 70 years ago when the railroad was king of transportation and dominated all youthful imaginations. Furthermore, the higher standard of protection against danger prevalent in modern industrial society has to some extent lulled adult and juvenile alike into an expectation of protection against danger under all circumstances and perhaps blunted our awareness of the need on occasion to look out for ourselves. In view of the substantial role which awareness of the surroundings plays in determining what conduct is negligent, an awareness which is dynamic and not static, and which over the years gradually changes its aim, focus, and intensity, we think conduct which would be negligent as a matter of law in the railroad age may no longer be so in the space age—and vice versa—and precedents formulated in earlier times under different social conditions may no longer be persuasive or controlling. (E.g. *Baltimore & Ohio R. R. Co.* v. *Goodman,* 275 U.S. 66 [72 L.Ed. 167, 48 S.Ct. 24, 56 A.L.R. 645], the Holmes stop-look-and-listen rule of contributory negligence.) The principle of *stare decisis* is never absolute, and the precedents of one generation which appear unreasonable

---

[2]Restatement Second Torts:

Section 463 "Contributory negligence is conduct on part of the plaintiff which falls below the standard to which he should conform for his own protection, and which is a legally contributing cause co-operating with the negligence of the defendant in bringing about the plaintiff's harm."

Section 464 (2): "The standard of conduct to which a child must conform for his own protection is that of a reasonable person of like age, intelligence, and experience under like circumstances."

Section 468: "The fact that plaintiff has failed to exercise reasonable care for his own safety does not bar his recovery unless his harm results from one of the hazards which make his conduct negligent."

to the next may not always be followed. (Prosser, Law of Torts (3d ed.) p. 209.) For these reasons we do not deem controlling the precedent of *Studer* v. *Southern Pac. Co., supra,* and we conclude that the issue of plaintiff's conduct presented a question of fact to be determined by the trier of fact in the light of the conditions of the times. (*Dickeson* v. *Baltimore & Ohio Chicago Terminal R. R. Co.* (1969) 42 Ill.2d 103 [245 N.E.2d 762, 764-765]; *Hawk* v. *City of Newport Beach,* 46 Cal.2d 213, 218 [293 P.2d 48]; *Cahill* v. *E. B. & A. L. Stone & Co.,* 153 Cal. 571, 577 [96 P. 84, 19 L.R.A. N.S. 1094]; *Ridge* v. *Boulder Creek etc. School Dist.,* 60 Cal.App.2d 453, 459-460 [140 P.2d 990].)

■ Second, on contributory negligence, while a 14-year-old's conduct in boarding a moving freight train may amount to negligence as a matter of law with respect to certain hazards, such as slipping and stumbling, it does not necessarily do so with respect to all conceivable hazards. Plaintiff's negligence bars recovery only when the hazard which caused his injury is the specific hazard with respect to which he has been negligent. (Rest. 2d Torts, § 468; Prosser, Law of Torts (3d ed.) pp. 431-432; Harper and James, Torts, p. 1230; *Furukawa* v. *Yoshio Ogawa* (9th Cir. 1956) 236 F.2d 272.) This relationship between negligence and injury is essentially one of cause and effect. (*Farole* v. *Eichman,* 39 Cal.2d 822, 825 [249 P.2d 261]; *Espinoza* v. *Rossini,* 247 Cal.App.2d 40, 49 [55 Cal.Rptr. 205].) In considering this aspect of contributory negligence we must assume it was perfectly safe to hop a ride on a moving train except for the particular hazard which in fact caused the accident (here, the hazard of a defective sill step). So considered plaintiff's negligence in jumping on the moving train would not necessarily bar his recovery.

■ One final aspect of contributory negligence. Defendant argues that plaintiff violated a statute which makes it a penal offense to trespass on a railroad train (Pen. Code, § 587, subd. (b)), and because of this violation plaintiff's conduct must be deemed negligent as a matter of law. Undoubtedly proof of plaintiff's violation of the statute furnishes some evidence that plaintiff's conduct was negligent. Such evidence, however, does not conclusively prove negligence but merely establishes a rebuttable presumption that plaintiff failed to exercise due care. (*Nevis* v. *Pacific Gas & Elec. Co.,* 43 Cal.2d 626, 633 [275 P.2d 761]; cf. Evid. Code, § 669.) The rule is similar to that applied to a defendant's violation of a statute, which creates a rebuttable, but not conclusive, presumption that defendant was negligent. (*Alarid* v. *Vanier,* 50 Cal.2d 617 [327 P.2d 897]; cf. Evid. Code, § 669.) Consequently, proof of plaintiff's violation of the statute prohibiting trespass on a railroad train does not justify a finding of contributory negligence as a matter of law.

To sum up on contributory negligence, it was for the jury to decide whether plaintiff in the light of his age, intelligence, and experience was negligent in hopping the train, what specific hazards he was negligent with respect to, and what hazards materialized in fact to cause his injuries.

Since a prima facie case of the railroad's negligence was presented and since plaintiff's assumption of risk and plaintiff's contributory negligence were both affirmative defenses of fact which the railroad was required to prove by a preponderance of the evidence, we conclude that the entry of the nonsuit on the first cause of action was erroneous.

### III

The second cause of action sought to impose absolute liability on the railroad because of its asserted violation of the Safety Appliance Act. This count was properly dismissed if plaintiff was not one of the class of persons to whom that act gave a cause of action. The act itself speaks in terms of railroad liability for the death or injury of railroad employees. (45 U.S.C., § 13.) Its inapplicability to a non-employee has been recently reaffirmed by the United States Supreme Court in *Crane* v. *Cedar Rapids & Iowa City Ry. Co.,* 395 U.S. 164, 165 [23 L.Ed.2d 176, 179-180, 89 S.Ct. 1706]:

"The Safety Appliance Act did not create a federal cause of action for either employees or nonemployees seeking damages for injuries resulting from a railroad's violation of the Act. (*Moore* v. *Chesapeake & Ohio R. Co.,* 291 U.S. 205 (1934).) Congress did, however, subsequently provide a cause of action for employees: The cause of action created by the Federal Employers' Liability Act of 1908, 35 Stat. 65, as amended, 45 U.S.C. § 51 et seq., embraces claims of an employee based on violations of the Safety Appliance Act. In such actions, the injured employee is required to prove only the statutory violation and thus is relieved of the burden of proving negligence (*O'Donnell* v. *Elgin, J. & E. R. Co.,* 338 U.S. 384 (1949); *Coray* v. *Southern Pac. R. Co.,* 335 U.S. 520 (1949); *Affolder* v. *New York, C. & St. L. R. Co.,* 339 U.S. 96 (1950)). He is not required to prove common law proximate causation but only that his injury resulted 'in whole or in part' from the railroad's violation of the Act (45 U.S.C. § 51); *Rogers* v. *Missouri Pac. R. Co.,* 352 U.S. 500 (1957)), and the railroad is deprived of the defenses of contributory negligence and assumption of risk (45 U.S.C. §§ 53, 54).

"In contrast, the nonemployee must look for his remedy to a common-law action in tort, which is to say that he must sue in a state court, in the absence of diversity, to implement a state cause of action." (See, also, *Jacobson* v. *New York, N. H. & H. R. Co.,* 206 F.2d 153, affirmed 347 U.S.

909 [98 L.Ed. 1067, 74 S.Ct. 474] (Safety Appliance Act held inapplicable to passenger).)

■■■■ In California violation of a statute does not impose strict or absolute tort liability on the violator but merely creates a rebuttable presumption of negligence, a presumption which may be overcome by evidence of justification or excuse. (*Alarid* v. *Vanier,* 50 Cal.2d 617 [327 P.2d 897]; *Maloney* v. *Rath,* 69 Cal.2d 442 [71 Cal.Rptr. 897, 445 P.2d 513]; cf. Evid. Code, § 669.) ■■■■ Therefore, while proof of a defective sill step would show that the Safety Appliance Act had been violated, the violation itself would not be conclusive proof of defendant's negligence in relation to plaintiff, nor would it impose strict or absolute liability on the defendant, nor would it abrogate the defenses of contributory negligence and assumption of risk. Patently, the second cause of action did no more than duplicate the charge of negligence set out in the first count. The trial court, therefore, acted properly in granting defendant's motion for summary judgment on the second cause of action.

The judgment for defendant is reversed on the first count and affirmed on the second count. Plaintiff to recover costs.

Roth, P. J., and Wright, J., concurred.

A petition for a rehearing was denied March 3, 1970, and respondent's petition for a hearing by the Supreme Court was denied April 1, 1970. McComb, J., and Burke, J., were of the opinion that the petition should be granted.