[No. B039479. Second Dist., Div. Two. Feb. 28, 1990.]

GERMAN PEREZ, a Minor, etc., Plaintiff and Appellant, v.
SOUTHERN PACIFIC TRANSPORTATION COMPANY,
Defendant and Respondent.

COUNSEL

Ned Good and Richard Huver for Plaintiff and Appellant.

Cummins & White, Kent M. Bridwell, Julianne M. Sweeters and Michael M. Bergfeld for Defendant and Respondent.

## OPINION

**FUKUTO, J.**—Plaintiff, German Perez, appeals the grant of summary judgment in favor of defendant Southern Pacific Transportation Company (Southern Pacific).

On June 21, 1982, plaintiff was 13 years of age. He, his brother Arturo and a cousin, Martin Ibarra, left Lincoln Park, where they had been swimming, and began walking home. While en route they stopped to play in the vicinity of railroad tracks located at or near a bridge on Valley Boulevard, west of Soto Street, in East Los Angeles.

While at the tracks, plaintiff saw a westbound train traveling at approximately 10 to 15 miles per hour. When the engine passed, plaintiff was standing on the far side of the third track. Plaintiff saw people in the engine and waved to them. They waved back.

After the engine passed, plaintiff's brother warned him not to jump onto the train.[1] Plaintiff, disregarding his brother's warning, ran with his cousin toward the middle of the train. Plaintiff reached up and grabbed the top bar of a two-bar ladder and placed his left foot on the bottom bar. Plaintiff's foot slipped. He fell, sustaining severe injuries, for which he sued Southern Pacific.

Southern Pacific filed a motion seeking summary judgment on the ground that Civil Code section 1714.7 provides immunity from liability under these facts. The trial court granted Southern Pacific's motion. Plaintiff appeals.

Section 1714.7 provides that "No person who is injured while getting on, or attempting to get on, a moving locomotive or railroad car, without authority from the owner or operator of the railroad, or who, having gotten on a locomotive or railroad car while in motion without such authority, is injured while so riding or getting off, shall recover any damages from the owner or operator thereof for such injuries unless proximately caused by an intentional act of such owner or operator with knowledge that serious injury is the probable result of such act, or with a wanton and reckless disregard of the probable result of such act."

Plaintiff contends the trial court erroneously interpreted the requirement of section 1714.7 to mean only express authority and not express or implied authority, and that plaintiff's evidence established that plaintiff had implied

---

[1] Plaintiff had jumped onto moving trains at least seven times prior to the date of the accident. His brother had warned him of the danger in the past; however, plaintiff disregarded the warnings.

authority to board Southern Pacific's train. Plaintiff also contends that even if he did not have Southern Pacific's express or implied authority to climb aboard the train, the immunity of Civil Code section 1714.7 does not apply because plaintiff has established defendant's conduct was committed with a wanton and reckless disregard of its probable result.

 Plaintiff concedes that he was not expressly authorized to climb aboard the moving locomotive. He contends that where Southern Pacific knew that children were jumping onto its trains, and did nothing to stop the children from so doing, there was a triable issue of fact as to whether he had implied authority to board the train. In his declaration, he declares that in the area where the accident occurred, he had seen several hundred children over several years before the accident jump on and off moving trains, and that railroad employees were in a position to see and know the children were jumping on and off the trains, yet never told the children to stop doing this or not climb or play on the moving trains. Plaintiff stated he understood and believed Southern Pacific's actions impliedly authorized him to jump on and off the moving trains.

In *Durham* v. *City of Los Angeles* (1979) 91 Cal.App.3d 567 [154 Cal.Rptr. 243], this court upheld the constitutionality of section 1714.7, and determined that it is applicable to minors. We held that "[t]he purpose of section 1714.7 . . . is reasonable, especially in light of Penal Code section 587b which makes train jumping a misdemeanor."[2] (At p. 573.) The question of whether the statute contemplates express or implied authority was not in issue.

 In construing a statute a reviewing court must ascertain the intent of the Legislature so as to effectuate the purpose of the statute. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].) In so doing, we may properly take judicial notice of "materials such as administrative determinations, committee reports [and] correspondence directed to the Governor's office. . . ." (*Karlin* v. *Zalta* (1984) 154 Cal.App.3d 953, 968, fn. 9 [201 Cal.Rptr. 379]; accord *Storch* v. *Silverman* (1986) 186 Cal.App.3d 671, 678-679 [231 Cal.Rptr. 27].) We also consider the state of the law as it existed prior to the enactment of the provision at issue. (*People* v. *Horn* (1984) 158 Cal.App.3d

---

[2] Penal Code section 587b, enacted in 1909, reads: "Every person, who shall, without being thereunto authorized by the owner, lessee, person or corporation operating any railroad, enter into, climb upon, hold to, or in any manner attach himself to any locomotive, locomotive-engine tender, freight or passenger car upon such railroad, or any portion of any train thereon, shall be deemed guilty of a misdemeanor, and, upon conviction thereof shall be punished by a fine *not exceeding fifty dollars ($50)*, or by imprisonment not exceeding 30 days, or by both such fine and imprisonment."

1014 [205 Cal.Rptr. 119]; *People* v. *Overstreet* (1986) 42 Cal.3d 891, 897 [231 Cal.Rptr. 213, 726 P.2d 1288].)

Section 1714.7 was enacted by the provisions of Senate Bill No. 1294. Originally, it was introduced as an act to amend section 587b of the Penal Code to provide, in addition to criminal penalties for trespass, limited immunity to the railroad against civil suits brought by trespassers. The amendment proposed read: "No person who is injured while getting on, riding, or getting off a locomotive or car without authority to do so from the owner or operator of the railroad, or who is injured by a locomotive or car while walking, standing, or playing on any railroad track or right-of-way without such authority, shall recover any damages from such owner or operator for injuries sustained while engaging in such activity unless such injuries are proximately caused by the intentional doing of an act by such owner or operator with knowledge that serious injury is the probable result or with a wanton and reckless disregard of its probable result." Thereafter, a second amendment was proposed narrowing the scope of the statute so that only those "getting on, riding, or getting off a locomotive or car without authority to do so" were denied recovery. Later, it was proposed that the statute be amended to its present language and placed in the Civil Code rather than in the Penal Code. On November 17, 1971, Senate Bill No. 1294 was signed by the Governor, adding section 1714.7 to the Civil Code.

The statute appears to have been enacted as a direct response to *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496] and *Beard* v. *Atchison, Topeka & Santa Fe Ry. Co.* (1970) 4 Cal.App.3d 129 [84 Cal.Rptr. 449]. (See *Durham* v. *City of Los Angeles, supra*, 91 Cal.App.3d at pp. 572-573.)

In *Rowland* v. *Christian,* our Supreme Court held that the liability of an owner of land was to be governed by ordinary principles of negligence law, thus abolishing the common law distinctions between the standards of care owed to trespassers, licensees, and invitees.

In *Beard*, this court held that a 14-year-old trespasser who was injured while climbing aboard a slow-moving freight car could recover from the railroad for any injuries proximately caused by the railroad's negligence noting that, "Under *Rowland* v. *Christian,* the liability of a possessor of property to trespassing children is no longer limited by the conditions set out in Restatement Second Torts, § 339 . . . or by the terms of other special doctrines and theories created as exceptions to a general rule barring trespassers from recovery for negligence, but is governed by Civil Code section

1714,[3] which imposes general liability on every person for injuries occasioned to others by want of ordinary care in the management of his property. The status of a claimant at the time of his injury no longer affects the general duty of the possessor of property to exercise ordinary care with respect to reasonable foreseeable risks of personal injury to persons coming on the property. The possessor's duty of ordinary care extends to invitees and trespassers alike, although the foreseeability of injury, and hence the degree of care required of a possessor, continues to be influenced by the likelihood that persons will be present on the property at a particular time and place, a likelihood normally considerably greater for invitees than for trespassers. [Citation.]" *Beard* v. *Atchison, Topeka & Santa Fe Ry. Co., supra,* 4 Cal.App.3d at pp. 135-136.)

On April 15, 1971, approximately one year after *Beard* was decided, Senate Bill No. 1294 was introduced on behalf of the California Railroad Association. The California Trial Lawyers' Association, the principle opponent to the bill, addressed their opposition in correspondence directed to the Governor. "Our Board of Governors has unanimously voted to oppose [section 1714.7] and believes its enactment into law would not be to the best interest of the public and is special legislation to immunize the railroads from their own careless acts. [¶] Under this bill, a railroad, which maintains tracks passing through residential areas and with full knowledge that children frequently enter the trains while passing through the area, would not even be required to see if there were any children trespassers on the train before doing a negligent act which could seriously injure the child trespasser. Under the above circumstances, if a child trespasser were severely maimed, the railroad could not be sued because its act was simple negligence." The opponents contended that "In substance, this bill changes the law pertaining to the 'attractive nuisance doctrine,'" and concluded, "[s]o long as this bill contains no exemption for children it is imperative to the public interest that you veto this measure." Notwithstanding the foregoing opposition, section 1714.7 was enacted.

■ Plaintiff argues he should be able to recover under the "habitual trespasser" theory available prior to the *Rowland* decision. With respect to habitual trespassers over railroad tracks accompanied by acquiescence of the company, a landowner, prior to *Rowland,* had a duty to discover and avoid injury to such trespassers. (*Smithwick* v. *Pacific Elec. Ry. Co.* (1929) 206 Cal. 291 [274 P. 980].) After reviewing the events that led to the passage of section 1714.7, and the language of the statute we are convinced

---

³ Civil Code section 1714 then read, in pertinent part: "Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself."

that the Legislature did not intend to revive the "habitual trespasser" theory where the trespasser "habitually" jumps aboard moving locomotives. The scope of the statute is narrow. The Legislature intended to deny recovery only to trespassers injured while getting on a moving train, or while riding or getting off a moving train after having gotten on while the train was in motion. The Legislature has acknowledged the obvious, i.e., that train jumping is extremely dangerous, a punishable offense under our Penal Code, and that those engaging in such activity are trespassers as a matter of law. It set forth the only limitations within the statute itself, i.e., a train jumper may recover if expressly authorized to do so, or the railway is guilty of willful misconduct. To allow a claimant such as plaintiff the opportunity to show that he was somehow "impliedly invited" aboard the train by railroad personnel based on nothing more than the railroad's failure to inform a claimant that he is trespassing and likely to be hurt in so doing would be to emasculate the immunity established by the statute. This we decline to do. We conclude that the Legislature intended to deny recovery to those individuals, such as plaintiff, who attempt to board a moving train without the railroad's express authority to do so.

■ Plaintiff next contends that even if he did not have Southern Pacific's express authority to climb aboard the train, the immunity of Civil Code section 1714.7 does not apply because plaintiff has established Southern Pacific's conduct was committed with a wanton and reckless disregard of its probable result. Plaintiff asserts that Southern Pacific's conduct "was wanton and reckless in failing to guard, warn, construct sign posts, fence, barricade and discourage children from playing on and around their moving trains, or provide tunnels or bridges for the children to cross over or under defendant's tracks."

Plaintiff declared in opposition to Southern Pacific's motion: "1. The area where this accident occurred is a short cut between our local residential area and Lincoln Park. Almost all of my friends used this short cut to get between the park and home. At the time of my accident, this area had several well worn paths. These paths between our homes and the park was the easiest and most common way to get to and from the park. [¶] 2. At the area where my accident occurred, there were no fences preventing or discouraging me or anyone else from crossing over the railroad tracks to get to the park. If there had been a fence or wall, I would have gone a different route to get to the park. [¶] 3. At the area where my accident occurred, there were no warning signs warning myself or anyone else from getting on or playing around moving or stationary trains. [¶] 4. At the area where my accident occurred, there was no pedestrian bridges leading to the park for us to cross over the train tracks, or a tunnel to go under the railroad tracks. If there had been such a bridge or tunnel, I would have used it to get to and

from the park. [¶] 5. . . . [¶] Lincoln Park, which is the park that I was coming from at the time of my accident, has been there for many years before my accident. It is right next to the railroad tracks where my accident happened. This park is very large. It has always attracted lots of kids of all ages who regularly go there to play and use the tracks as a short cut and part of the play ground. For several years before my accident, the railroad men saw lots of kids crossing the tracks and going to and from the park and had to know that the park had been there for many years before my accident. Before my accident the railroad people used to regularly see lots and lots of kids crossing over the tracks in the same area that I went to go to the park. They saw lots and lots of kids jumping on and off both moving and stationary trains at his area and I never saw the railroad people do anything about it or say anything about it."

Based on the foregoing, plaintiff concludes that "[t]his is a case where defendant knowingly, intentionally, wantonly and recklessly permit[ted] . . . children to cross in [a] heavily traveled area but then [refused to bear] responsibility when someone [was] seriously injured."

Plaintiff must show that Southern Pacific intentionally acted, with either knowledge that serious injury is the probable result or with a wanton or reckless disregard of the probable result. The trial court found: "As to wanton and reckless disregard, [the] declarations [were] insufficient to raise a triable issue of material fact. Again, Civil Code section 1714.7 was enacted to preclude liability for just the kind of situation presented here."

In the absence of authority to board the train, plaintiff cannot recover damages from Southern Pacific unless his injuries were "proximately caused by an intentional act of [the railroad] with knowledge that serious injury is the probable result of such act, or with a wanton and reckless disregard of the probable result of such act." (Civ. Code, § 1714.7.) The language of the statute has been equated with "willful misconduct." (*Goncalves* v. *Los Banos Mining Co.* (1962) 58 Cal.2d 916, 918 [26 Cal.Rptr. 769, 376 P.2d 833]; *Lostritto* v. *Southern Pac. Transportation Co.* (1977) 73 Cal.App.3d 737, 744 [140 Cal.Rptr. 905].)

We agree with the trial court that in the situation here presented, the failure of Southern Pacific to erect barriers to prevent the public from crossing the train tracks was not, as a matter of law, willful misconduct. While it may be argued that an accident such as plaintiff experienced might be anticipated, it is only where a defendant's conduct amounts to a wanton and reckless disregard, as opposed to a mere failure to perform a duty that a defendant can be held liable for willful misconduct. (*Porter* v. *Hofman* (1938) 12 Cal.2d 445, 448 [85 P.2d 447].) ■ Willful misconduct means

something different from and more than negligence, however gross. It involves " 'conduct of a *quasi* criminal nature, the intentional doing of something either with the knowledge that it is likely to result in serious injury or with a wanton and reckless disregard of its possible consequences.' " (*Ibid.*) "To constitute willful misconduct, . . . more must be shown than the bare possibility of injury. Otherwise, there would be little distinction between willful misconduct and negligence, since negligence is predicated upon a breach of duty which is imposed when there exists a foreseeable, or potential, risk of harm." (*Bains* v. *Western Pacific R.R. Co.* (1976) 56 Cal.App.3d 902, 905 [128 Cal.Rptr. 778].) ▮ At most, plaintiff has raised a triable issue of material fact as to whether Southern Pacific was negligent in failing to take the measures plaintiff urges should have been taken to prevent him from trying to ride the train. The section requires something more than negligence on the part of Southern Pacific.

▮ Plaintiff also contends that Southern Pacific waived the right to raise section 1714.7 as an affirmative defense and should have been estopped from claiming one month before trial of the five-year-old case that Southern Pacific was entitled to judgment as a matter of law. Contrary to plaintiff's assertion, Southern Pacific was not required to plead the statute as an affirmative defense in its answer. (See *Cahill Bros., Inc.* v. *Clementina Co.* (1962) 208 Cal.App.2d 367, 385 [25 Cal.Rptr. 301].) The record reflects that plaintiff was aware of the potential applicability of section 1714.7 as early as four years before Southern Pacific filed its motion for summary judgment. Under these circumstances, it cannot be held that Southern Pacific waived its right to rely on the immunity found in section 1714.7.

Judgment is affirmed.

Compton, Acting P. J., and Gates, J., concurred.