[No. A088552. First Dist., Div. Four. Dec. 28, 2000.]

JOSE SILVA et al., Plaintiffs and Appellants, v.
UNION PACIFIC RAILROAD COMPANY, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

## COUNSEL

Perry S. Dobson for Plaintiffs and Appellants.

Barry & Randolph, William C. Barry, Thomas A. Cregger and Michelle J. Drees for Defendants and Respondents.

## OPINION

**WOOLARD, J.\***—Teenager Lucas Silva was killed when he was hit by a train owned and operated by defendant Union Pacific Railroad Company (Union Pacific). His parents, plaintiffs Jose and Lupe Silva, filed a wrongful death action. Identified in the complaint as "significant factors in the death of [the] deceased" were "negligent operation" of the train and the failure "to maintain fences protecting the public from the train tracks [*sic*]."

The heart of Union Pacific's litigation strategy has been the preemption of state common law liability by virtue of the extensive federal regulation of the railroad industry. The key to that strategy has been to establish that the train that killed Lucas Silva was traveling within a federally authorized speed limit. Union Pacific obtained a summary judgment on the ground that it had established that the train had been operating within that speed limit. That judgment was reversed because the evidentiary showing establishing the speed limit was insufficient. (*Silva v. Union Pacific Railroad Co.* (Sept. 30, 1997, A076412) [nonpub. opn.].)

---

*Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, § 6 of the California Constitution.

When the cause was returned to the superior court and called for trial, both sides made a number of competing in limine motions. The first category of motions concerned whether Union Pacific should or should not be precluded from offering evidence that it had no duty to fence its right-of-way at the accident site. The second category involved motions relating to the preemption issue and ancillary matters such as speed, brakes, and track classification. After hearing extensive argument on the motions, the trial court ruled that Union Pacific had no duty to fence. At the conclusion of an evidentiary hearing the court ruled that Union Pacific had established federal preemption. After plaintiffs advised the court that they were "unable to proceed, solely because of the rulings on [the] motions in limine," the parties stipulated to a judgment for Union Pacific that would allow plaintiffs to obtain appellate review of those rulings. Following entry of that judgment, plaintiffs perfected this timely appeal.

REVIEW

I

Plaintiffs' attack on the first ruling—that Union Pacific had no duty to fence off the right-of-way through which Lucas Silva entered upon the tracks—concedes that the issue has previously been decided in favor of railroads, but plaintiffs argue the issue is ripe for reexamination in light of an intervening decision by our Supreme Court.

Up until 1968 it was generally settled throughout the country that railroads had no duty to fence access to their tracks in order to prevent injury to unauthorized entrants, particularly children. (See, e.g., *Holland v. Baltimore & O. R. Co.* (App. D.C. 1981) 431 A.2d 597, 603, fn. 11, and decisions cited; Annot., Duty of Railroad to Fence Track as against Children (1922) 16 A.L.R. 944.) California analyzed the issue as one involving attractive nuisance as defined by section 339 of the Restatement of Torts. The leading California decision had this to say: "Many miles of railroad track run on or along streets and roads in California. To fence rights-of-way on public streets would be impractical if not an unlawful obstruction of public thoroughfares. . . . [¶] The problem presents other ramifications which must be considered. It seems more reasonable to expect children to play on an open right-of-way running through a residential or a suburban area than on a city street used for vehicular traffic. Thus, were the attractive nuisance doctrine applied in the case of a train traveling on a street, and on those facts alone, it would be equally applicable to trains traversing populated areas. Dwellings flank hundreds of miles of right-of-way in California and the sight of children playing on a right-of-way is not uncommon. To hold that railways

must install childproof fences . . . in order to prevent children from being attracted to moving trains, would place an unreasonable if not intolerable burden upon the possessor maintaining the condition." (*Joslin v. Southern Pac. Co.* (1961) 189 Cal.App.2d 382, 387-388 [11 Cal.Rptr. 267]; accord, *Durham v. City of Los Angeles* (1979) 91 Cal.App.3d 567, 574 [154 Cal.Rptr. 243]; see also *Herrera v. Southern Pacific Ry. Co.* (1961) 188 Cal.App.2d 441, 450 [10 Cal.Rptr. 575].)

■ *Rowland v. Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496] is the celebrated decision abolishing distinctions in the duty of care owed by a landowner to trespassers, licensees, or invitees. "Under *Rowland v. Christian*, the liability of a possessor of property to trespassing children is no longer limited by the conditions set out in Restatement Second Torts, § 339 [citations], or by the terms of other special doctrines and theories created as exceptions to a general rule barring trespassers from recovery for negligence, but is governed by Civil Code, sec[t]ion 1714, which imposes general liability on every person for injuries occasioned to others by want of ordinary care in the management of his property. The status of a claimant at the time of his injury no longer affects the general duty of the possessor of property to exercise ordinary care with respect to reasonable foreseeable risks of personal injury to persons coming on the property. The possessor's duty of ordinary care extends to invitees and trespassers alike, although the foreseeability of injury, and hence the degree of care required of a possessor, continues to be influenced by the likelihood that persons will be present on the property at a particular time and place, a likelihood normally considerably greater for invitees than for trespassers. [Citation.] The former gradations of degree in the possessor's duty of care, which varied with the status of persons on the property, have been superseded by a generic duty owed to all persons on the property based on the reasonable foreseeability of harm to them. Under *Rowland v. Christian* the extent of a possessor's duty is controlled by the foreseeability of the risk and not by the status of the person injured." (*Beard v. Atchison, Topeka & Santa Fe Ry. Co.* (1970) 4 Cal.App.3d 129, 135-136 [84 Cal.Rptr. 449].)[1]

■ *Rowland* listed a number of factors to be considered in determining whether to allow an exception to the general principle that a person is liable

---

[1]The *Beard* court treated *Rowland* as effectively abolishing the doctrine of attractive nuisance. (*Beard v. Atchison, Topeka & Santa Fe Ry. Co., supra,* 4 Cal.App.3d 129, 135-137.) This court reached the same conclusion. (*Smith v. Americania Motor Lodge* (1974) 39 Cal.App.3d 1, 7 [113 Cal.Rptr. 771, 88 A.L.R.3d 1188].)

Civil Code section 1714.7 provides: "No person who is injured while getting on, or attempting to get on, a moving locomotive or railroad car, without authority from the owner or operator of the railroad, or who, having gotten on a locomotive or railroad car while in motion without such authority, is injured while so riding or getting off, shall recover any damages from the owner or operator thereof for such injuries unless proximately caused by an intentional act of such owner or operator with knowledge that serious injury is the probable

for injury caused by the failure to exercise reasonable care—"the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland v. Christian, supra,* 69 Cal.2d 108, 112-113.)

"The sine qua non of any negligence action is, of course, the existence of a duty of care owed by the alleged wrongdoer to the person injured, or to a class of which he is a member. [Citations.] Although the determination of duty is primarily a question of law, its existence may frequently rest upon the foreseeability of the risk of harm. [Citations.] Foreseeability may be decided as a question of law only if, under the undisputed facts, there is no room for a reasonable difference of opinion." (*Gregorian v. National Convenience Stores, Inc.* (1985) 174 Cal.App.3d 944, 948 [220 Cal.Rptr. 302].) ■ We have found no authority subsequent to *Rowland* holding that a railroad has no duty as a matter of law to fence its tracks. An unusual complication in our assaying this inquiry is the unusual manner in which the issue comes to us.

Our Supreme Court has decided issues of duty in three contexts: (1) by demurrer, which takes facts as alleged in the complaint (e.g., *Ballard v.*

result of such act, or with a wanton and reckless disregard of the probable result of such act." This statute, which was. enacted in response to *Beard* (see *Perez v. Southern Pacific Transportation Co.* (1990) 218 Cal.App.3d 462, 467-469 [267 Cal.Rptr. 100]), is much discussed in the parties' briefs. As there is nothing to suggest that Lucas Silva was engaged in trying to get on or off the train, this statute has no relevancy to this appeal. Parenthetically, we note that *Durham v. City of Los Angeles, supra,* 91 Cal.App.3d 567, which is a train-hopping case, is erroneously read by Union Pacific as holding that there is no duty to fence after *Rowland.* The only discussion of *Joslin* and the pre-*Rowland* rule occurs within that part of the opinion holding that section 1714.7 does not violate equal protection. (*Durham,* at pp. 572-574.) For purposes of our inquiry, *Durham* is pure dicta.

Likewise immaterial here is Public Utilities Code section 7626, which provides: "Every railroad corporation shall make and maintain a good and sufficient fence on both sides of its track and property. If it does not and if its engine or cars kill or maim any cattle or domestic animals upon its line of road, except where the road runs through or upon public land it shall pay to the owner of the cattle or other domestic animals a fair market price for them, unless the killing or maiming occurred through the neglect or fault of the owner of the animal." Statutes of this nature have been construed as not making a railroad liable for injury to minors who stray upon tracks at an unfenced spot. (See, e.g., *Di Caprio v. New York C. R. Co.* (1921) 231 N.Y. 94 [131 N.E. 746, 16 A.L.R. 940] & Annot., Duty of Railroad to Fence Track as against Children, *supra,* 16 A.L.R. 944, 946-948.) Public Utilities Code section 7626 had been construed in a similar fashion, with the additional restriction to adjoining property owners. (*Baker v. Southern Cal. Ry. Co.* (1895) 110 Cal. 455, 456 [42 P. 975]; *Barbee v. Southern Pacific Co.* (1908) 9 Cal.App. 457, 459-460 [99 P. 541].)

*Uribe* (1986) 41 Cal.3d 564 [224 Cal.Rptr. 664, 715 P.2d 624]; *Hedlund v. Superior Court* (1983) 34 Cal.3d 695 [194 Cal.Rptr. 805, 669 P.2d 41, 41 A.L.R.4th 1063]); (2) on summary judgment granted on the basis of evidentiary showings by the parties (e.g., *Kentucky Fried Chicken of Cal., Inc. v. Superior Court* (1997) 14 Cal.4th 814 [59 Cal.Rptr.2d 756, 927 P.2d 1260]; *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666 [25 Cal.Rptr.2d 137, 863 P.2d 207]; *Rowland v. Christian, supra,* 69 Cal.2d 108); or (3) after a full trial (e.g., *Weirum v. RKO General, Inc.* (1975) 15 Cal.3d 40 [123 Cal.Rptr. 468, 539 P.2d 36]). In each of these contexts the court has an established factual universe, contradicted or not. That is what is lacking here.

The trial court appears to have made its ruling that "there's no duty to fence" solely on the basis of the moving papers of the parties' respective in limine motions and argument from counsel. Although both sides made evidence-related or factual references in those papers, neither provided much in the nature of a factual context. Plaintiffs' counsel made what would ordinarily look like an offer of proof,[2] but there is no indication whether it played any part in the trial court's ruling. In neither the parties' papers nor the reporter's transcript of the arguments on those motions is there any discussion of the *Rowland* factors quoted above. To judge by the remarks of plaintiffs' counsel, the issue of foreseeability would figure prominently in the analysis of those factors. (See fn. 2, *ante.*) With the basis of the facts used in determining foreseeability thus uncertain, the trial court may not have been able to decide the question of duty as an issue of law. (See *Gregorian v. National Convenience Stores, Inc., supra,* 174 Cal.App.3d 944, 948.) An additional complication is that it deprives this court of the basis for undertaking an informed review of the trial court's ruling.

We conclude that the unusual posture in which the issue was decided constituted error. This is not to say that such a ruling could not be made on an in limine motion. It is to say, however, that such a ruling can only be made with a clear factual or evidentiary basis, even if contradicted. That may be done when this matter is returned to the trial court. But for either the trial court or this court to decide an issue of duty atop an evidentiary void is far too perilous for comfort.

---

[2]"Based on the principles of *Rowland v. Christian,* . . . I'm prepared to prove that people crossing the tracks is foreseeable. If the train knows that [*sic*], and I'm prepared to prove that they did know that, the testimony of the engineer, he knew of people crossing the tracks in that area. [¶] Now, the question is, does that create a duty on the railroad to at least have a survey? My safety experts said they should have done a study of that area considering the persons crossing the tracks, the number of schools in the area, and the BART tracks overhead, which . . . did in fact confuse the decedent in this case. [¶] . . . [¶] The cost to the railroad of building a fence here, which would have prevented this accident, I'm prepared to prove that as well, it would have prevented this accident at a minimal cost to the railroad."

## II*

. . . . . . . . . . . . . . . . . . . . . . . .

### Disposition

The judgment is reversed and the cause is remanded to the trial court for further proceedings in accordance with part I of this opinion. The parties shall bear their respective costs of appeal.

Hanlon, P. J., and Sepulveda, J., concurred.

---

*See footnote, *ante*, page 1024.