Filed 9/21/21  Atlas Pallet Corp. v. USS-POSCO Industries CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION ONE

| | |
|---|---|
| ATLAS PALLET CORP., <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> USS-POSCO INDUSTRIES, <br><br>     Defendant and Respondent. | A159332 <br><br> (Contra Costa County <br> Super. Ct. No. C19-00370) |

A trespasser started a fire on property owned by defendant USS-POSCO Industries (Industries).  The fire spread to, and damaged, property owned by plaintiff Atlas Pallet Corp. (Atlas).  Atlas sued Industries for negligence, premises liability, trespass, and nuisance.[1]  Industries interposed a demurrer to the operative complaint on the ground the allegations are insufficient to establish that it owed and breached a duty of due care.  The trial court agreed and sustained the demurrer without leave to amend.

On appeal, Atlas contends Industry owed a general duty of due care under Civil Code section 1714 to mitigate fire hazards on its property and a statutory duty under Health and Safety Code sections 13007 and 13008 "to prevent its property from posing a fire hazard to its neighbors."  Atlas further

---

[1]  Atlas also named additional defendants, including the trespasser, but this appeal concerns only Industries.

1

contends Industries' alleged duty and breach thereof support claims for nuisance and trespass.

We conclude Atlas's allegations meet the minimal threshold to survive a demurrer, and reverse.

## BACKGROUND

Atlas alleges as follows:  Industries owns a field located directly south of Atlas's property.  "[T]he field was full of overgrown dry grass and weeds and other combustible materials such as combustible dust, discarded tree limbs, and other debris."  Industries either deposited these combustible materials, or knowingly allowed them to accumulate, or neglected to remove them.

Additionally, there have been homeless encampments "with combustible material like furniture and camping supplies" on the property.  Industries' commercial neighbors have "seen [Industries] use bulldozers to remove encampments from the [Industries] property and fill up dumpsters with the debris and have seen trespassers set up an encampment fifty feet away from a previously demolished encampment."  A neighbor had "seen trespassers on the . . . property break off tree branches and start fires."  According to Pittsburg Police Department records, trespassers entered Industries' property in 2010, 2015, and 2016.  In 2018, an Industries employee reported a homeless encampment on Industries' property, which the police located near Atlas's property.  A neighbor had spoken with Industries about trespassers and asked it to perform weed abatement.  One such call occurred the week before the August 2018 fire at issue.

There were two previous fires on Industries' property.  In August 2013, five years prior to the fire at issue, an occupant living in an encampment on the property discarded smoking material into the grass, starting a fire that

2

spread to and damaged Atlas's property. Three years later, in July 2016, a fire started on Industries' property due to electrical arcing.

The fire at issue, i.e., the August 2018 fire, was caused by a trespasser who had been seen " 'camping' " on the property. He started the " 'grass fire' " with a lighter. The fire spread to " 'adjacent dry grass' " and eventually spread to, and damaged, Atlas's property.

Atlas maintains Industries "had a duty to 'clear debris,' 'mow dry grass,' and 'perform weed abatement' in its field in order to decrease the risk that 'fires occurring on its property' would 'spread[] to the Atlas property.' " It further contends Industries should have taken "reasonable measures (such as installing fencing, clearing vegetation, and demolishing encampments) 'to prevent homeless people from entering the property, camping there, and creating a fire hazard for neighboring landowners.' "

## DISCUSSION

### *Standard of Review*

In an appeal from a judgment of dismissal following the sustaining of a demurrer, we first review the allegations of the complaint de novo to determine "whether [it] states facts sufficient to constitute a cause of action." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).) " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.' " (*Ibid.*) "Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Ibid.*)

We review a court's refusal to grant leave to amend for an abuse of discretion. (*Blank, supra,* 39 Cal.3d at p. 318.) In applying this standard, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and

3

we reverse; if not, there has been no abuse of discretion and we affirm." (*Ibid.*)  The plaintiff has the burden of establishing such a reasonable possibility.  (*Ibid.*)

**Premises Liability and Negligence**

"The elements of a negligence claim and a premises liability claim are the same: a legal duty of care, breach of that duty, and proximate cause resulting in injury.  [Citations.]  Premises liability ' "is grounded in the possession of the premises and the attendant right to control and manage the premises" '; accordingly, ' "mere possession with its attendant right to control conditions on the premises is a sufficient basis for the imposition of an affirmative duty to act." ' " (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1158 (*Kesner*).)

### *General Duty of Due Care*

Atlas maintains it sufficiently alleged Industries (a) owed a duty of due care to prevent its property from posing a fire hazard to its neighbors and (b) breached this duty by failing to take precautions against the risk of fire despite knowledge of the condition of its property and the presence of transients on the property.

"California law establishes the general duty of each person to exercise, in his or her activities, reasonable care for the safety of others.  (Civ. Code, § 1714, subd. (a).)" (*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 768.)

"As a consequence of this general duty, those who own or occupy property have a duty to maintain their premises in a reasonably safe condition.  [Citations.]  To comply with this duty, a person who controls property must ' " ' "inspect [the premises] or take other proper means to ascertain their condition" ' " ' and, if a dangerous condition exists that would have been discovered by the exercise of reasonable care, has a duty to give

4

adequate warning of or remedy it." (*Staats v. Vintner's Golf Club, LLC* (2018) 25 Cal.App.5th 826, 833 (*Staats*), fn. omitted.)

" ' " '[D]uty' is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same, to conform to the legal standard of reasonable conduct in . . . light of the apparent risk. What the defendant must do, or must not do, is a question of the standard of conduct required to satisfy the duty." ' " (*Staats, supra,* 25 Cal.App.5th at p. 833.)

Moreover, a landowner's duty is not limited to those who are within the confines of the property. (*Kesner, supra*, 1 Cal.5th at p. 1159 ["We have never held that the physical or spatial boundaries of a property define the scope of a landowner's liability."].)

For example, in *Sprecher v. Adamson Companies* (1981) 30 Cal.3d 358 (*Sprecher*), a downhill neighbor alleged that an uphill owner failed to correct an active landslide condition that caused damage to the neighbor's property. (*Id.* at p. 361.) In reversing and remanding in favor of the downhill neighbor, our Supreme Court rejected the long-standing common law rule that property owners are not liable for natural conditions existing on their property that cause damage to adjacent property. (*Id.* at pp. 362-372; *Id.* at p. 364 ["courts are increasingly using ordinary negligence principles to determine a possessor's liability for harm caused by a condition of the land"].) Rather, it had become "clear," said the court, "that a duty to exercise due care can arise out of possession alone." (*Id.* at p. 367.) Among other things, the court pointed out that a duty with respect to natural conditions is consistent with the recognized rule that "the possessor is under an affirmative duty to act with regard to a dangerous artificial condition even though the condition was

5

created solely . . . by the unauthorized conduct of some third person." (*Id.* at p. 369, citing Rest.2d Torts, § 364, subd. (c).)

Accordingly, Industries' effort to distinguish *Sprecher* as limited to natural conditions arising on the property is unavailing, as it disregards the high court's analogy to an owner's duty with respect to artificial conditions, including those created by third parties.

Moreover, in *Kesner,* in which the court held that manufacturers using asbestos products owe a duty of due care to members of an employee's household, it similarly observed " 'one's general duty to exercise due care includes the duty not to place another person in a situation in which the other person is exposed to an unreasonable risk of harm through the reasonably foreseeable conduct (including the reasonably foreseeable negligent conduct) of a third party.' " (*Kesner, supra,* 1 Cal.5th at pp. 1140, 1148, quoting *Lugtu v. California Highway Patrol* (2001) 26 Cal.4th 703, 716.) And this same duty applied to both negligence and premises liability theories. The plaintiffs' premises liability claim, the court explained, focused on "an allegedly hazardous condition created and maintained on [the] property and [the manufacturers'] alleged failure to contain the hazard as a reasonable property owner" at the time would have done. (*Kesner,* at p. 1159.) "Th[e] claim [was] readily attributable 'to [a] specific condition, natural or artificial,' on [the] property." (*Ibid.*)

Industries is correct in pointing out courts recognize "exceptions" to the broad, general duty of due care ensconced in Civil Code section 1714. But a court's inquiry in this regard does not focus on case-specific facts. Rather, the "[a]nalysis of duty occurs at a higher level of generality," and the question before the court is whether the injury "is *categorically* unforeseeable and, if not, whether allowing the possibility of liability would result in such

6

significant social burdens that the law should not recognize such claims." (*Kesner, supra,* 1 Cal.5th at p. 1144.)

In determining whether to depart from the general duty in a particular case, courts consider the following factors: "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland v. Christian* (1968) 69 Cal.2d 108, 113 (*Rowland*), superseded by statute on another ground as stated in *Perez v. Southern Pacific Transportation Co.* (1990) 218 Cal.App.3d 462, 467; see *Kesner, supra,* 1 Cal.5th at p. 1145.)

"The *Rowland* factors fall into two categories. Three factors— foreseeability, certainty, and the connection between the plaintiff and the defendant—address the foreseeability of the relevant injury, while the other four—moral blame, preventing future harm, burden, and availability of insurance—take into account public policy concerns that might support excluding certain kinds of plaintiffs or injuries from relief." (*Kesner, supra,* 1 Cal.5th at p. 1145.)

"For purposes of duty analysis, ' "foreseeability is not to be measured by what is more probable than not, but includes whatever is likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it in guiding practical conduct." . . . [I]t is settled that what is required to be foreseeable is the general character of the event or harm—e.g., being struck by a car while standing in a phone booth—not its precise nature

7

or manner of occurrence.' " (*Kesner, supra*, 1 Cal.5th at p. 1145, quoting *Bigbee v. Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 57–58.)

Accordingly, the principal question with respect to foreseeability here is whether it is "likely enough" that a "reasonably thoughtful person" "in the setting of modern life" would have foreseen "the general character" of the "event or harm," namely the spread of a fire from Industries' property to Atlas's neighboring property. We conclude that Atlas's allegations that Industries failed to address and manage the combustible vegetation and debris on its property, in conjunction with the history of fires on the property, suffice to meet this relatively low threshold. (See *Levy-Zentner Co. v. Southern Pac. Transportation Co.* (1977) 74 Cal.App.3d 762, 776 [railroad owed and breached duty to warehouse tenants sustaining fire damage where it neglected "the rudiments of basic fire protection," including failing to inspect the "old wooden warehouse" and failure to take precautions against continuing itinerant activity that caused the fire]; see also *Staats, supra,* 25 Cal.App.5th at pp. 837-839 [given known presence of yellow jackets in the area, owner of golf course owed duty of care to patron stung by the insects].)

As for the public policy factors of moral blame, preventing future harm, burden, and availability of insurance, Industries makes no persuasive argument that this case should categorically be outside the norm of the general duty of due case. Rather, it focuses on the allegations pertaining to vagrant encampments and to the trespasser who started the fire at issue. As we discuss in the next section of this opinion, we agree with Industries that these allegations, alone, do not suffice to state a breach of a duty of due care. However, these are not the sole allegations made in the complaint, and in combination with the allegations of failure to manage the combustible

8

vegetation and material on its property, and a prior history of fires, Atlas's complaint is sufficient to survive a demurrer.[2]

We emphasize that at this juncture, we are dealing only with allegations, and there is no evidence before us as to what steps Industries may or may not have taken, or could *reasonably* have taken, to maintain and manage its property.[3]

### *Third Party Criminal Conduct*

Industries' principal argument on appeal focuses on the law concerning a premises owner's liability for third party criminal conduct. It maintains

---

[2] Atlas also relies on Health and Safety Code sections 13007 and 13008 (commonly referred to as the fire laws) as establishing a duty of due care. However, the fire laws "do not establish a standard of care, but merely codify the basis of fire liability." (*People v. Southern Pacific Co.* (1983) 139 Cal.App.3d 627, 633.) Accordingly, these laws add nothing to the duty analysis here, and we therefore do not discuss them further.

[3] The trial court expressed concern that allowing Atlas to survive a demurrer would mean "owners or operators of huge swaths of grassland realty (and probably forest too), throughout much of the county and the state" would be liable "for spreading fires on undeveloped land." The court queried, "[i]f lightning strikes a tree in unmown and ungrazed ranch land, and the uncut dry grass causes the fire to spread to nearby housing developments, is the rancher to be liable to the homeowners for not mowing his ranch? Plaintiff offers no authority for such a startling imposition of tort responsibility for fires that the landowners had nothing to do with starting." To begin, the complaint does not allege, or depict by incorporated diagrams, any "huge swath" of grassland, let alone land zoned and used for agricultural purposes. Rather, the complaint alleges and depicts an industrial area with modest acreage associated with some facilities. Further, in light of the " 'relatively broad level of factual generality' " of the duty analysis (*Kesner, supra,* 1 Cal.5th at p. 1143), the court's comments are more appropriately directed at the element of breach, i.e., whether Industries made *reasonable* efforts to maintain and manage its property.

9

that under this law, it owed no duty of due care because the fire at issue was started by a trespasser.

"Generally, 'a duty to take affirmative action to control the wrongful acts of a third party will be imposed only where such conduct can be reasonably anticipated.'" (*Melton v. Boustred* (2010) 183 Cal.App.4th 521, 532 (*Melton*), quoting *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 676, disapproved on another ground in *Reid v. Google* (2010) 50 Cal.4th 512, 527, fn. 5.) Thus, foreseeability in third party crime cases "must be measured by what the defendant actually knew." (*Margaret W. v. Kelley R.* (2006) 139 Cal.App.4th 141, 156.)

Accordingly, in such cases, California courts have applied a "sliding-scale balancing formula." (*Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224, 243.) "In circumstances in which the burden of preventing future harm caused by third party criminal conduct is great or onerous . . . heightened foreseeability—shown by prior similar criminal incidents or other indications of a reasonably foreseeable risk of violent criminal assaults in that location—will be required. By contrast, in cases in which harm can be prevented by simple means or by imposing merely minimal burdens, only 'regular' reasonable foreseeability as opposed to heightened foreseeability is required." (*Id.* at p. 243, fn. 24.)

While Atlas alleges Industries could have readily taken measures to prevent entry onto the outer reaches of its property, this, of course, is a mere allegation, and there is no evidence as to actual cost or efficacy of such measures. There, likewise, is no evidence before us as to the feasibility, in terms of personal safety and legal liability, of an owner's efforts to eject trespassers, or of the availability and nature of assistance by local law enforcement. In any case, we do not consider ejecting trespassers a "simple"

10

task that imposes only "minimal burdens" on a property owner, particularly in this day and age of widespread possession and ready use of weapons, whether knives, battering implements, or firearms.

We therefore consider this case as falling on the side of the sliding scale requiring allegations of prior similar criminal incidents of which Industries was aware. Atlas alleges one prior fire set by trespassers, the 2013 fire, occurring five years before the fire at issue. That single instance, alone, is not sufficient to impose a duty of care on Industries.

*Castaneda v. Olsher* (2007) 41 Cal.4th 1205, is illustrative. In that case, a mobile home park resident was hit by a stray bullet fired during a fight between rival gangs. (*Id.* at pp. 1210-1211.) The resident filed suit against the owner of the park, claiming the owner had a duty to evict gang member tenants who "harass and annoy other residents of the park." (*Id.* at p. 1219.) There had been one relevant prior occurrence of gun violence on the property, and there was evidence the owner knew the shooter was a gang member. (*Id.* at p. 1212.) The high court held the prior similar incident served merely as a reminder of "the general danger of escalation involved in gang confrontations" and "did little to establish that gun violence by [the shooter and his fellow gang members] was a likely occurrence." (*Id.* at p. 1221.)

Similarly, here, the one fire associated with a homeless encampment in 2013, did not establish that a fire set by a single trespasser five years later was a "likely occurrence."

However, as we have discussed, Atlas has alleged more than that a trespasser started the 2018 fire, and, collectively, its allegations are

11

minimally sufficient to allege that Industries owed and breached a general duty of due care.[4]

## *Nuisance*

" ' "[P]rivate nuisance is a civil wrong based on disturbance of rights in land. . . . [T]o proceed on a private nuisance theory the plaintiff must prove an injury specifically referable to the use and enjoyment of his or her land. The injury, however, need not be different in kind from that suffered by the general public." ' " (*Mendez v. Rancho Valencia Resort Partners, LLC* (2016) 3 Cal.App.5th 248, 262 (*Mendez*), citing *Monks v. City of Rancho Palos Verdes* (2008) 167 Cal.App.4th 263, 302.)

---

[4] At oral argument, Industries urged that *Brown v. USA Taekwondo* (2021) 11 Cal.5th 204 (*Brown*) forecloses a duty of care here because it had no "special relationship" with Atlas giving rise to an obligation to protect it from injury caused by a third party trespasser. In *Brown,* the plaintiffs alleged they were sexually abused by their coach and sued, among others, the sponsoring taekwondo organization and the United States Olympic Committee. (*Id.* at p. 210.) The high court addressed "how courts should decide whether a defendant has a legal duty to take action to protect the plaintiff from injuries caused by the third party." (*Id.* at p. 209.) The court held that a plaintiff must "satisfy both the special relationship test and the *Rowland* factors before a duty to protect the plaintiff from third party harm can be imposed of the defendant." (*Id.* at pp. 209, 212, 222.) *Brown,* however, did not involve the liability of a property owner and the duties that adhere to such ownership or possession. Indeed, the court recognized that the "[t]he no-duty-to-protect rule will not relieve the defendant of an otherwise applicable duty to exercise reasonable care when, by its own conduct, the defendant has increased the risk of harm to the plaintiff." (*Id.* at p. 215, fn. 7; *id.* at p. 216 [a defendant that "has neither performed an act that increases the risk of injury to the plaintiff nor sits in a relation to the parties that creates an affirmative duty to protect the plaintiff from harm," owes no legal duty to the plaintiff].) Here, Industries has an "otherwise applicable duty" as a premises owner, and Atlas alleges that Industries own conduct increased the risk of harm of fire spreading onto adjacent property.

"In *San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 938 . . . , the Supreme Court outlined the elements of an action for private nuisance.  First, the plaintiff must prove an interference with his use and enjoyment of his property.  (*Ibid.*)  Second, 'the invasion of the plaintiff's interest in the use and enjoyment of the land [must be] *substantial*, i.e., that it cause[s] the plaintiff to suffer "substantial actual damage." ' (*Ibid.*)  Third, ' "[t]he interference with the protected interest must not only be substantial, but it must also be unreasonable" [citation], i.e., it must be "of such a nature, duration or amount as to constitute unreasonable interference with the use and enjoyment of the land." ' (*Ibid. . . .*)"  (*Mendez, supra,* 3 Cal.App.5th at pp. 262–263.)

Nuisance liability, like negligence liability, may arise from the acts of a third party.  (See *Reid & Sibell, Inc. v. Gilmore & Edwards Co.* (1955) 134 Cal.App.2d 60, 66.)  In *Reid*, for example, an owner of goods filed suit against a defendant who "merely contribut[ed] to the spread of a fire not caused . . . by its act or omission."  (*Id.* at pp. 62–63, 65.)  The court, applying the theory of nuisance to the claim of negligence before it, noted that there was "no sound reason to restrict . . . [the duty to refrain from causing unreasonable invasion or risk] to acts which contribute to the origin of a fire, as distinguished from its spread."  (*Id.* at p. 66.)

For essentially the same reasons we have concluded Atlas has sufficiently alleged a negligence claim, we likewise conclude its allegations are sufficient to state a nuisance claim.

### Trespass

"The elements of trespass are: (1) the plaintiff's ownership or control of the property; (2) the defendant's intentional, reckless, or negligent entry onto the property; (3) lack of permission for the entry or acts in excess of

13

permission; (4) harm; and (5) the defendant's conduct was a substantial factor in causing the harm." (*Ralphs Grocery Co. v. Victory Consultants, Inc.* (2017) 17 Cal.App.5th 245, 262.)

Trespass may be committed by consequential and indirect injury, as well as by direct and forcible injury. Accordingly, it is now well-established that a trespass may be accomplished by way of a fire that spreads to neighboring property. (*Elton v. Anheuser-Busch Beverage Group, Inc.* (1996) 50 Cal.App.4th 1301, 1305 [negligent "invasion by fire" which causes damage to adjacent property is "trespass," italics omitted]; see *Scholes v. Lambirth Trucking Co.* (2017) 10 Cal.App.5th 590, 597 [deciding limitations period applicable to fire "trespass" claim].)

Atlas has therefore also sufficiently alleged a trespass.

### DISPOSITION

The judgment is reversed, and the case remanded for further proceedings consistent with this opinion. Appellant to recover costs on appeal.

_____

Banke, J.

We concur:

_____

Margulies, Acting P.J.

_____

Sanchez, J.

A159332, Atlas Pallet Corp. v. USS-POSCO Industries

15